# CHARLESTOWN.

## NEELEY *v.* RULEYS.

Submitted September 10, 1885.—Decided October 2, 1885.

1. In a suit to enforce a vendor's lien it is not error to decree a sale of the land, on which the lien for the purchase–money is reserved, without other lienors being made parties and the amount and priorities of their liens settled. (p. 688 )

2 In a suit to enforce a vendor's lien the defendant filed an answer averring that there were many judgment-liens, against the plaintiffs lands, and that he did not have other lands beside the tract sold defendant sufficient to discharge said liens but did not aver, that the plaintiff was insolvent. The court did not err

in refusing to set aside an order of sale on this ground, nor in refusing to send the cause to a commissioner to enquire into the matters set up in the answer.  (p. 690.)

3. A decree for the sale of land without providing therein that, before the commissioner shall sell the land, he shall execute a bond in a penalty prescribed by the court, is erroneous and for such error will be reversed.  (p. 691.)

4. A plaintiff in a suit to enforce a vendor's lien can not waive the bond required by the statute of the commissioner appointed to make such sale   (p. 692.)

The opinion of the Court contains a statement of the facts of the case.

*R. S. Blair* for appellant.

*Edwin Maxwell* for appellee.

JOHNSON, PRESIDENT:

At February rules 1885 the plaintiff filed his bill in the circuit court of Doddridge county to enforce his vendor's lien on a tract of land sold and conveyed to defendant.   On March 20, 1885, a decree was rendered on the bill taken for confessed to sell said land for the payment of the purchase-money, and in the decree the plaintiff " expressly waived bond and security from the commissioner " appointed to sell the land.  On April 6, 1885, at the same term the defendants appeared and moved to set aside the said decree ordering the sale of said land, which motion the court overruled.   Thereupon the defendants tendered their answer and demurrer to plaintiff's bill and asked leave to file the same, which was ordered to be done; and the complainant filed his replication in writing thereto, to the filing of which the defendants objected, which objection was overruled.   The defendants tendered a bill of exceptions to the refusal of the court to set aside the decree and to the refusal to enter a decree prepared by the defendants' counsel, showing that the court refused to set aside the decree and to refer the cause to a commissioner, &c., which bill the court refused to sign, therefore the defendants' counsel tendered a bill of exceptions to the refusal of the court to sign the first bill of exceptions, which embraced the first bill ; and this the court signed.

The answer of defendants exhibits the abstracts of a number of docketed judgments against the plaintiff and avers " that the lands now owned by the complainant are not sufficient within themselves to liquidate and discharge the liens hereinbefore set forth, and therefore that redress would have to be had against the land sold to respondent." It avers the readiness of the defendants to pay the purchase-money due, " if the said liens are released by the creditors of said Neely, and that they ought not to be compelled to pay said money until the complainant removes the aforesaid liens." It further avers, that no decree of sale of the land can be had until all the liens existing against the same shall have been ascertained by a convention of the creditors before a commissioner appointed by the court, and asks a reference to a commissioner to ascertain the amount of all the real property owned by plaintiff and all the liens existing against the same, and what liens exist against the property purchased by defendants, and asks that the purchase-money due from respondents may be applied to the discharge of the liens against the land sold to them, so as to secure the land bought by them and save them harmless.

The special replication sets up the facts, that many of the liens mentioned in the answer have been discharged, and that others, if not discharged are barred by the statute of limitation. It admits that one lien, that of the *State* v. *John Donohue* and sureties, of whom complainant was one, will have to be paid in part by plaintiff, but that he has ample property to pay such part, without the property sold to defendants, &c.

From said decrees the defendants appealed.

The first assignment of error is the refusal to set aside the decree of sale upon the filing of the answer at the same term, at which the decree was entered, because the answer showed that there were many judgment-liens against the lands of the plaintiff, and such lienors should have been made defendants to the bill. There is nothing in this assignment, because in a suit to enforce a vendor's lien it is not error to decree a sale of the land, on which the lien for the purchase-money is reserved, without ascertaining the amount of other liens and their priorities. (*Cunningham* v. *Hedrick*, 23 W.

Va., 5.79.) It was not necessary therefore, that such lienors should be made parties to the suit. The doctrine applicable to creditors' suits does not apply to a suit to enforce a vendor's lien.

It is also objected, that the court failed to pass upon the demurrer. The appellants were not predjudiced by this, as an inspection of the bill will show, that it is sufficient, and that the demurrer ought to have been overruled.

The third assignment of error is, that the court permitted the special replication to be filed to defendants' answer. Special replications are discountenanced in chancery pleading, and it is error to permit them to be filed except as the statute requires in certain cases, as this Court has repeatedly held ; but the filing of the special replications did not prejudice the appellants.

The fourth and fifth assignments of error raise the question, whether upon the averment in the answer, "that the lands now owned by the said complainant were not sufficient within themselves to liquidate and discharge the liens set forth in said answer, therefore relief would have to be had against the lands sold to the defendants," which, it is claimed, was admitted to be true, there being no general replication to the answer, it was the duty of the court to set aside this order of sale and send the cause to a̤ commissioner to ascertain the liens against the land so sold, so that the purchase-money might be applied to the discharge of these liens, and thus save the defendants harmless.    *Wamsley* v. *Stalnaker*, 24 W. Va. 214 was an injunction to restrain the collection of a judgment on a bond for purchase-money, on the ground that there. were a number of judgments, which were liens upon the land bought by the defendants of the plaintiff, and the bill specifies them in detail and files with the bill copies thereof, exceeding in amount the judgment on the purchase-money-bond; and the bill alleges that those judgments are unpaid, and prays that the plaintiff be forever enjoined from collecting said judgment, and that the various liens, against the lands be reported according to their priorities, and for general relief.    The covenants in the deed in that case were much stronger than in this.    In addition to the covenant of general warranty (the only covenant here) he covenanted

87

that·"he was seized of said tract of land and had good right and title to convey the same," also that "the same shall not be subject to any liability from incumbrances thereon except for the vendor's lien in favor of Jacob H. Arbogast, which is hereby expressly reserved." The court held, that on such a state of facts, where there are recorded judgment-liens on the land at the time of the conveyance, a court of equity will not enjoin or stay the collection of a judgment against the vendee for the purchase-money of the land, unless the bill shows, that the vendor has no other lands sufficient to satisfy such judgment-liens, and that he is unable to pay them because of his pecuniary condition.

If it appeared in defendants' answer, that Neely had not other lands sufficient to satisfy all the liens, and that he was insolvent, a court of equity, before it would order the payment of the purchase-money to him, would provide for the protection of the vendees. This could be done by the payment by the vendees of the purchase-money into court, and the retention thereof by the Court, until the liens on the land were discharged; but if all the averments in the answer be taken as true, they do not show, that Neely is insolvent, the averment, that it will be necessary to subject the lands bought by the defendants, not being equivalent to such an averment. Even if this were so, the parties could protect themelves, as before indicated, by paying the money into court, and having an order made to protect their interests. The answer shows no reason for arresting the sale of the land, because after sale the order could be made for the protection of the purchaser, by refusing to pay over the money to the plaintiff until the liens on the land were discharged if equity required this to be done. The court did not err in refusing to set aside the order of sale and refusing to refer the cause to a commissioner.

The court did not err in refusing to sign a bill of exceptions. Bills of exceptions are unknown to chancery practice and pleading. If a bill of exceptions were proper, it could not be taken to a refusal to sign a bill of exceptions. The only way a judge can be compelled to sign a bill of exceptions is by *mandamus*. (*Henry* v. *Davis*, 13 W. Va. 230.)

It is also assigned as error, that the decree waived the execution of bond by the commissioner appointed to make the sale. The commissioner will not be likely to make the sale without executing the bond. The last clause of sec. 1 of chap. 142, Acts 1882, p. 444 provides: "And no sale shall be made by such commissioner, until such bond and security has been given and approved by the clerk; and every notice of such sale shall have appended to it the certificate of such clerk, that bond and security have been given by the commissioner as required by law. The same section also declares, that no special·commissioner appointed by a court shall receive money under a decree or order, until he gives bond with good security before the said court or its clerk, and any special commissioner violating the provisions of this section by receiving money before executing bond as aforesaid, shall be deemed guilty of a contempt of court, and shall be punished by fine and imprisonment or either at the discretion of the court."

It would be very hazardous for a commissioner under a decree authorizing him to sell to receive any money before executing the bond. This clause is intended to prevent commissioners from receiving money under such decree, until the bond is executed; but the last clause forbids a sale under such decree until the bond is executed, and the certificate of the clerk that such·bond has been given is appended to the notice of sale so that bidders may know, that the law has been complied with in this important respect. The statute is mandatory not directory. It *forbids* the sale until the statute has been complied with, and if the sale is made without the bond being executed, it may be set aside. The decree therefore, which in terms dispenses with the bond, is necessarily erroneous. It must provide for the bond and fix the penalty thereof, otherwise a bond could not be executed before the clerk. The law requires a bond, and in accordance therewith it has been the practice for decrees to require one and to fix the penalty. Sometimes sales have been made by commissioners without executing bond, and much trouble and loss have been the result; now the statute affords the remedy by declaring no sale shall be made, until bond is executed, &c.

692            Railway Co. *v.* Long.           [Sup. Ct.

But it is said the plaintiff could waive the bond. Such a thing is not contemplated by the statute. Of course, if all the parties to the suit, who were or might be interested in the giving of the bond, were to enter a consent-decree, that no bond should be executed, while it would be in violation of both the spirit and the letter of the statute, yet on well settled principles, it being a consent-decree, it could not be reviewed. The decree should have required bond and should have fixed its penalty. Because it did not so require, it must be reversed at the costs of the appellee, and the cause is remanded for further proceedings.

Reversed. Remanded.