## CHARLESTON.

### CORE *v.* WIGNER.

*(GREEN JUDGE, absent.)

Submitted January 21, 1889.—Decided February 25, 1889.

1. VENDOR AND VENDEE—TITLE.

In a suit by vendor to enforce the payment of purchase-money under an executory contract for the sale of land, if defendant alleges a defective title of vendor, he may have a reference to ascertain the character of the title, or the court may, where the proof raises a doubt as to title, make such reference; but unless such reference be asked by the vendee, or such doubt appear, such reference is not necessary, and the court may proceed to subject the land to sale for the purchase-money.

*On account of illness.

2. Specific Performance.

     If at the date of the decree of sale the title, though originally defective, has become good by reason of the purchaser's possession under the statute of limitations, the court may go on to enforce the contract.

3. Specific Performance—Notice—Estoppel.

     A vendor, who after sale to a vendee sells and conveys the same land to another without notice to the second purchaser of the first sale, is for that reason estopped from collecting by specific performance of the contract from the first purchaser the purchase-money for the land sold to the second purchaser.

*E. Davis,* for appellant.

*R. S. Blair,* for appellee.

Brannon, Judge:

On the 14th, January, 1868, A. S. Core made an agreement, whereby Core sold to Wigner a farm bounded in part by J. M. Stephenson, Nathan Park, and M. M. Hitchcock, said to contain 206 or 208 acres; but if it should contain more than 200 acres, Wigner was not to pay more than $1,600.00 for it, and if it should contain 200 acres or less, Wigner was to pay $8.00 per acre. Core was to convey with general warranty, whenever Wigner should ask a deed, retaining a lien for unpaid purchase-money. Core brought a chancery suit to enforce the payment of the purchase-money by sale of the land. Wigner answered alleging, that by actual survey the tract contained only 185 acres and perhaps not so much, and that by the agreement he was entitled to an abatement for fifteen acres from the $1,600.00; and further that twelve acres more of the land was in dispute and claimed by others, who were threatening to take possession, which disputed land would entitle him to an abatement of $96.00 more. He alleged and specified various payments and claimed, that these with the abatement for loss of quantity would more than pay for the land. He further averred, that since the commencement of the suit he had discovered, that plaintiff had no title to the land and never had, but that other parties had title to it, and he therefore asked a rescission of the contract of purchase, and a refunding of the purchase-money.

     Plaintiff replied generally to the answer and also filed a special replication, in which he denied the allegation of the

answer, that the tract did not contain 200 acres, and denied that the purchase-money had been paid as claimed by Wigner, and denied the allegation of plaintiff's want of title. He averred, that defendant had entered into possession under his purchase on 1st of April, 1868, and had continued in quiet and peaceable possession ever since, and claimed, that he could hold the land by reason of such possession against all adverse claim, having been in possession more than ten years, and could not now complain of defect of title.

. The case was referred to a commissioner to have a survey made to ascertain the number of acres sold by Core to Wigner, and to state an account between the parties in regard to the sale under the contract of sale, and report what balance, if any, was due for unpaid purchase-money. There were three surveys and reports of the master under orders in the case. The last report based on a survey of Douglas, county surveyor, submits without decision by him but for the decision of the court statements numbered 1 and 2,—the one based on the tracts containing 199¼ acres, the other on the quantity of 164 acres, at $8.00 per acre, and finding a balance due the plaintiff of $862.65.

There seems to be no controversy as to payments, but on the contents of the tract. This question is involved in the following facts: The contract of purchase declares that the land sold is bounded by J. M. Stephenson, Nathan Park and M. M. Hitchcock and others. It appears that in 1843, Vanwinkle, commissioner of forfeited and delinquent lands, conveyed to Isaac Lambert a lot of 200 acres, being lot No. 3 of a tract of 5,000 acres sold as forfeited or delinquent in the name of Worth. It seems that lot No. 6 in said tract was sold by said commissioner to one Jacob Cork, and 140 acres of it was sold for non-payment of taxes in his name in 1858, and purchased by Michael M. Hitchcock, who had the 140 acres surveyed by precise metes and bounds by the county-surveyor, the report being given in the record, but no deed is shown to Hitchcock. On the plat of Surveyor Douglass both lots No. 3 and the Hitchcock tract of 140 acres are represented, and it appears that there is an interlock between them, the Hitchcock boundary lapping upon lot No. 3, thirty four and one half acres. Deducting for lot No. 3 which con-

tains 201¼ acres two acres, for part of an entry made by Rollins, leaves 199¼ acres, the quantity on which one of the commissioners statements is based; and deducting the lap of 34½ acres leaves lot No. 3 to contain 164¾ acres, the quantity assumed in commissioners alternate statement.

There is some question as to the true location of lot No. 3; but it seems to me that the figure formed on the surveyor Douglas' plat P P, by the lines A B, B C, C D, D A, correctly represent lot No. 3 of the Worth survey. Surveyor Douglas is of opinion, that the land sold by Core to Wigner is lot No. 3, and that Hitchcock's tax-purchase could not lawfully lap on it, because Cork, in whose name it was sold for taxes, purchased lot No. 6 in the Worth survey, yet Douglas is decided in stating in evidence, that by error the 140 acres of Hitchcock was made to lap over on lot No. 3. So it is plain that such lap exists.

Now in this case it is not a trial of title between the Hitchcock claim and the owner of lot No. 3 as to the territory within the interlock; but as the contract of sale between Core and Wigner calls for the Hitchcock land, we must first fix the line of that land and ascertain where it is, and that will be the line of the land sold by Core to Wigner. It may be true, that in laying down the Hitchcock tax-purchase of 140 acres it was by mistake made to encroach on lot No. 3, and it may be lot No. 3 is the superior title, though as to that we can not say under the light of this case; but when you once see, that there is a Hitchcock survey, which the contract admits and the evidence shows, and fix its place, you fix the limit there of Core's sale to Wigner. Core did not in terms sell lot No. 3 to Wigner; he sold him a farm bounding on Hitchcock land. How can he stretch the land beyond the line of the Hitchcock land,—make him take land he did not buy? The court can not make a contract. Wigner knowing of this trouble about the interlock between the lands, might very well and prudently have intended not to be involved in a lawsuit about it with Hitchcock, and for that very reason have called for the Hitchcock land, for that land had been made by actual survey ten years before the contract between Core and Wigner. The question of title is irrelevant.

It seems that Wigner and Hitchcock were in possession of their tracts of land; but it does not appear, that Wigner was in possession of the interlock, and he says in evidence that he did not claim it; but Hitchcock seems to have made an improvement within it as far back as before 1861. But possession is irrelevant. It is only a question, of how far Wigner's purchase went. The Circuit Court refused to limit his purchase to the Hitchcock line or make any abatement for what I have called the "interlock" but compelled Wigner to cross the Hitchcock line, and go on to the line C D of lot No. 3, and in doing so erred. Wigner's executrix, after the revival of the suit after Wigner's death, if there was an order of revival, filed an answer alleging, that Core had since the death of Wigner sold and conveyed to one Haga a tract of land covering this Hitchcock land, he having acquired it from Hitchcock subsequent to the commencement of the suit, and in so doing conveyed up to the line E P, including to Haga this 34½ acres, thus recognizing the line E P and the Hitchcock land. So it would seem, that he does so recognize it. What further effect has this act on his cause? He had filed with his bill a deed conveying this interlock, the very land he afterwards conveyed to Haga, and this deed not recorded would be no notice to Haga, if it includes this interlock; and the vendor turns round and conveys to another the very land, which he seeks to make a former purchaser take and pay for, imposing a lawsuit on such former purchaser. He would thus get pay for the same land from two persons. But, while this action makes his claim inconsistent, the view I take gave him power to sell the interlock to Haga, as he had not sold it to Wigner; but from Core's stand-point, he contending that he had sold this interlock to Wigner, and asking pay for it from Wigner, this act of conveying it to Haga on 22d January, 1885, would seem to be an estoppel against his obtaining a decree on 7th November, 1887, against Wigner, compelling him to pay for that identical land. This deed was merely tendered with the bill, and the answer rejected it; and, if the court had held it insufficient, how could the plaintiff have complied with its order requiring another deed, after having disabled himself from conveying by conveying the legal title to Haga? This is an additional reason for saying the court erred. It

should be added that Wigner says he never had set up any claim to any of the land within the interlock.

Claim is made by the defense for a further abatement of twelve acres between the lines B C and the dotted line E X on plat P P, based on a claim of one Vinton. It is not easy owing to the indefiniteness of the record to state the precise character of the claim. Vinton's claim or boundary is not shown by deed or title-paper further than a deed to him from Wolff, which does not show the source of his title so as to show just where or what he claims, and thus establish his line. If, as seems, he owns lot No. 4 of Worth survey, there would seem to be no conflict, for lots No. 3 and 4 are coterminous. No particular line of Vinton's is shown. There is apparently no ground for this abatement.

As to the allegation that plaintiff had no title the answer is very indefinite, not specifying what title conflicted with the plaintiff's or wherein the plaintiff's was defective. And the evidence makes this no better. There is no appearance that the plaintiff's title is defective, and Wigner took possession in April 1868, and was still in peaceable possession, when this suit began in July, 1879, and his title has, even if defective, become good. Moreover, if he had any serious reason to contest the title, he should have asked a reference specially as to title. *Middleton* v. *Selby*, 19 W. Va. 168. There should be no recission of the contract.

The decree should have been on the basis of the second statement finding a balance of purchase-money of $270.65 as of 19th June, 1882, amounting on 7th November, 1887, to $342.00, which latter sum with interest and costs should have been decreed instead of $1,140.52; and the decree complained of is to be reversed with costs to appellant in this Court, and a decree must be entered for the plaintiff for $342.00, with interest from the 7th day of November, 1887, and costs of suit, instead of $1,140.52, as decreed by the Circuit Court; and the cause is remanded to the Circuit Court for further proceedings.

REVERSED. REMANDED.