# CHARLESTON.

## McClaugherty v. Croft.

(English, President, *dissenting*).

Submitted January 25, 1897—Decided April 7, 1897.

1. Vendor's Lien—*Enforcement of Lien—Prior Liens—Parties.*

    In a suit to enforce a purchase-money lien reserved in a deed conveying legal title, with only covenant of general warranty, it is not necessary to make prior lienors, holding liens against the property, parties, nor to refer the case to ascertain such liens, unless it appear that the vendor is insolvent. But if the plaintiff in his bill shows such liens, and proposes to have the purchase money go to discharge them, the owners of such prior liens must be parties. (p. 272.)

2. Vendor's Lien—*Enforcement of Lien—Prior Liens—Reference.*

    In a suit to enforce a purchase-money lien reserved in a conveyance containing a covenant for further assurance, and

one of general warranty, where prior liens appear, the plaintiff cannot have a decree for his debt until such liens be removed. If such liens appear of record unreleased, and be not shown discharged or barred, the vendor is entitled, if he asks it, to a reference to ascertain whether they yet exist. (p. 274.)

3. Vendor's Lien—*Enforcement of Lien—Deed of Trust—Decree—Parties.*

Though, when suit was brought to enforce a vendor's lien, the land was under a prior lien by deed of trust, making the trustee and creditor necessary parties, yet where, pending it, the trust has been released by release, revesting legal title in the owner, decree may be made, without making such trustee and creditor parties. (p. 275.)

4. Decree—*Defective Title—Prior Liens.*

If, at the date of a decree selling property for purchase money, the title, though defective, because of prior lien or otherwise, has become clear of lien and good to the purchaser, the court may go on to decree to enforce the contract. (p. 275.)

5. Statute of Limitations.

Plea of the statute of limitations is generally personal to the party, and not available to strangers; but privies in estate, as heirs, devisees, vendees, or mortgagees of the property, may use it to defend their property. (p. 275.)

6. Statute of Limitations — *Judgment Creditor — Living Debtor.*

Question: Can one judgment creditor of a living debtor plead the statute of limitations against another? (p. 276.)

Appeal from Circuit Court, Mercer County.

Bill by D. W. McClaugherty against D. N. Croft. Decree for plaintiff, and defendant appeals.

*Reversed.*

W. W. McClaugherty and D. E. Johnston, for appellant.

S. L. Flournoy, for appellee.

Brannon, Judge:

McClaugherty brought a suit in chancery against Croft to sell one undivided fourth in a town lot, to pay a balance of purchase money, for which a lien was reserved upon the property in the deed conveying it. Croft answered, setting up a deed of trust and numerous judgments against McClaugherty, as prior liens, as defense to the suit, and asking that the lienors be made parties, and that the money

in his hands be applied to discharge them, particularly a judment of Straley & Co. against McClaugherty. The court refused to require the lienors to be made parties, or to ascertain liens by reference, and decreed the debt to McClaugherty without making provision for its application on any lien, and directed the property to be sold. Croft appeals.

This is not a case to sell land for purchase money under an executory contract not carried into execution by conveyance of the legal title, but is a suit to sell land for purchase money, under a lien reserved in a conveyance, and different principles apply in the latter case. In the former a court will not compel an unwilling purchaser to accept a title, unless it is clear, reasonably free from adverse claim or incumbrance; but in the latter the contract has been executed by the parties, the purchaser has agreed to take the land with the covenant of general warranty, thus agreeing to pay unpaid purchase money, and to risk the solvency of the warrantor in case he shall lose his land. Our cases have relaxed this rule of English equity, our rule being that a vendor cannot compel payment of the purchase money if the title be shown to be defective, or a suit to recover or subject it to a lien be pending, or a suit be threatened, or there be an actual incumbrance, and the vendor be insolvent. I understand that the vendor's insolvency is an indispensable element to enable the vendee to resist payment. It seems unreasonable to compel the purchaser to pay out the money, and run the hazard of the vendor's future insolvency, where actual liens are shown; but if the purchaser took a covenant of general warranty, and no covenant against incumbrances or other covenant, it is so. *Wamsley* v. *Stalnaker*, 24 W. Va. 214; *Neely* v. *Ruleys*, 26 W. Va. 686; *Kinports* v. *Rawson*, 29 W. Va. 487 (2 S. E. 85); *Heavner* v. *Morgan*, 30 W. Va. 345 (4 S. E. 406); *Faulkner* v. *Davis*, 18 Grat. 660. But I do not think this case is governed by principles announced in those cases. In the *Wamsley-Stalnaker Case* it would appear from Judge Greene's language "that there was no showing at all towards the insolvency of the vendor, or that any suit was brought or threatened to subject the land to the payment of the judgments set up by the defendant, nor in any single fact stated in the bill that tended in any

degree to show that there was the least probability that any suit would be brought to subject the land to any of the judgments; and the evidence shows that there was not the least probability of it, and it shows, indeed, that it was impossible that the land could ever be subjected to the payment of any of the judgments, there being lands liable to be first subjected, greatly exceeding the value of the judgments." How different this present case! The defendant alleged that his purchased land was in danger to answer a large judgment greater than the money in Croft's hands, which the plaintiff's bill admitted to be unpaid. Plaintiff's bill admitted this large judgment, and stated that the plaintiff himself desired the purchase money due from Croft to be paid for the very purpose of satisfying the large judgment which the bill specified as existing as a lien thereon, thereby virtually saying that the plaintiff had no other lands, or indeed any property or estate to discharge that very considerable judgment. Otherwise, why the necessity of calling upon the defendant for its payment? There was no affirmative charge of insolvency, it is true, in the bill; but we may say, by strong implication, that the defendant was not unquestionably, as in the *Wamsley Case*, able otherwise than through this debt to discharge that judgment. And, as the bill itself asked the payment of this debt by Croft to go on that judgment, it showed an interest in the judgment creditor, calling upon the plaintiff to bring him before the court, in order that the proper amount due might be judicially fixed, to the safety of the defendant, and in order that the money might be paid into his hands. Without his presence, how could the court do this? · How could the proposition of the bill to pay this judgment be carried out without his presence? Instead of bringing him before the court, and decreeing the proper amount into his pocket in discharge of that judgment, the court decreed it into the pocket of the plaintiff, without provision for its discharge; and we think that the court ought to have made him a party. We think, under the covenant of general warranty, that should have been done, under the particular circumstances shown by the bill in this case. We do not intend to impugn the cases cited above at all. We only say that we think this present case, on the showing made by the bill, called for the presence of this creditor.

But there is another important feature in this case. The deed contains a covenant for further assurance, and it bound the vendor to a conveyance free of incumbrance, and he cannot enforce payment of purchase money without clearing up incumbrances. Code 1891, c. 72, s. 18; Rawle, Cov. §§ 104, 105; 19 Am. & Eng. Enc. Law, 984; 2 Minor, Inst. 721. It requires the removal of judgments. 2 Lomax, Dig. 272. Certainly, the removal of incumbrance is a thing necessary to assure and make good the property sold. Rawle, Cov. § 98, says that the importance of this covenant to the purchaser can hardly be over-stated. The remedy, indeed, by action at law for damages, is one seldom sought, and the reported cases are few; but, whatever may be the doubt of a purchaser's right to the specific enforcement by a court of equity of the other covenants for title, there is little or none with respect to that for further assurance. And equity will entertain a suit to specifically enforce this covenant. *Nelson* v. *Harwood*, 3 Call, 342. Rawle (in section 62) says: "As to the covenant for further assurance, the rule is somewhat different. It is not a mere allegation that the title is good; that there is no incumbrance; not a mere promise to respond in damages. It is a specific undertaking to execute such particular deed or deeds as may be necessary for the better and further assurance of title to the purchaser. If performed, it may make a doubtful title marketable. If unperformed, who can measure the damages to be recovered at law? Who can measure by money the difference between the value of a good title to keep, and yet not good to sell? Hence, it will be found that, from an early day, courts of equity have enforced the specific performance of covenants for further assurance." This covenant ought to be given as much force as the special provision in the bond for purchase money, in addition to general warranty, was given by Judge Allen in *Peers* v. *Barnett*, 12 Grat. 417. Here it is in the deed itself.

I do. not concede the idea that it is consistent with proper practice to provide for the application of the money to liens by later decree. If the creditor ought to be a party, or a reference is necessary, it ought to be before decree, because the decree ought to fix the amount due him so as to bind him, so the debtor and creditors will know what

the property is to raise. A volume of cases tell us that, where this is necessary, it ought to be before a decree of sale. In this case the answer asked the removal of liens appearing of record, some surely unpaid; and it prayed that the purchase money yet owing be applied thereon, and that the answer be taken as a cross bill, and all relief proper on its facts be decreed. It was error to decree that purchase money into the pockets of the plaintiff, instead of making Straley & Co. parties, and applying the money to the discharge of their debt. Where judgments appear as liens under a covenant of further assurance, I do not see how the plaintiff can avoid making their owners parties, unless they are shown to be paid, or appear barred by limitation. Most of these judgments appear barred, and though the plea of limitations is generally personal to the debtor, and cannot be used by a stranger, yet I think one who is his privy in estate, as an heir or devisee, grantee, or mortgagee, may defend his property with such plea. *Werdenbaugh* v. *Reid*, 20 W. Va. 588; *Shipley* v. *Pew*, 23 W. Va. 487; 13 Am. & Eng. Enc. Law, 710; 1 Wood, Lim. § 41; Busw. Lim. 527. All these judgments save one appeared barred and paid, and for that reason I see no error in not making their owners parties. The judgment of Straley & Co. remained unpaid. I do not see how Croft was in default.

When this suit was brought, the property was subject to a prior deed of trust, making it necessary that the trustee and creditor under it be parties. *Turk* v. *Skiles*, 38 W. Va. 404 (18 S. E. 561). But pending suit a formal common-law deed of release by trustee and creditor was made and recorded, releasing and revesting in the owner the legal title, and thus removing the lien. This rendered their presence as parties unnecessary. Such would, I think, be the effect also of a statutory recorded release, under section 4, chapter 76, Code 1891. Though a title be defective at the commencement of a suit, yet if, pending it, it become free of lien, or clear, so as to be good to the purchaser, the court may go on to decree. *Core* v. *Wigner*, 32 W. Va. 277 (9 S. E. 36); *Peers* v. *Barnett*, 12 Grat. 410. For this reason there was no need of an amended bill. There is no error in closing or reading the depositions of plaintiff. Defendant had ample opportunity for cross-examination.

I do not now say whether one judgment lienor can plead the statute against other lienors of a common living debtor. It is not necessary to say here how this is. He is a general lienor, while a mortgagee is a lienor on that particular property. It was left open in the opinion in *Woodyard* v. *Polsley*, 14 W. Va. 211, and in *Lee* v. *Feamster*, 21 W. Va. 111, and *Conrad* v. *Buck*, Id. 411.

English, President (*dissenting*):

This was a suit in equity brought in the Circuit Court of Mercer county by D. W. McClaugherty against D. N. Croft. The bill alleges: That the plaintiff sold to the defendant one-fourth of what is known as the "Rideout Property," consisting of a house and lot on Bland street, in the city of Bluefield, Mercer County, W. Va., for the sum of one thousand dollars. That the defendant paid three hundred dollars in cash at the time of the purchase, and assumed a small balance of purchase money against said property, and executed two bonds to plaintiff for the remaining part of the purchase money, one of which was due on the 1st day of October, 1893, and the other would be due on the 1st day of April, 1894, the 1893 bond being for the sum of two hundred and eighty four dollars and thirty-eight cents, and the 1894 bond for the sum of three hundred and thirty-three dollars, copies of which bonds were filed and exhibited as part of the plaintiff's bill. That at the time of the purchase the plaintiff executed to the defendant a deed reserving a vendor's lien on the property for the remaining part of the purchase money (as evidenced by the bonds above referred to), a certified copy of which deed was also exhibited and made part of the plaintiff's bill. That at the time he sold this property to the defendant there were two judgments docketed against him on the judgment lien docket in the clerk's office of the county court of Mercer county, which had not been paid or payment provided for, one of which was in favor of Straley & Co., for the sum of nine hundred and sixty-six dollars and sixty-nine cents, and twenty-one dollars and fifty-five cents costs, the other in favor of W. H. Hoge for the sum of five hundred and forty-six dollars and seven cents, and fourteen dol-

lars costs, both obtained on the 12th day of January, 1893. That, to procure money to pay the last-named judgment, plaintiff sold the bonds above mentioned to J. H. McClaugherty, and with the proceeds paid said judgment, after which he purchased said bonds from J. H. McClaugherty, and they are now for plaintiff's benefit, as is shown by the indorsements thereon. The plaintiff further says that he is anxious to collect said bonds, and wishes to have the proceeds applied to the payment of the first above referred to judgment, and he prays that said property may be sold to pay off his vendor's lien thereon, and to apply the sum arising therefrom to the payment of the above-mentioned judgment, and for general relief.

The defendant, D. N. Croft, demurred to the plaintiff's bill, and also filed his answer, in which he states, among other things: That on the 29th day of April, 1889, Joseph I. Doran and wife, by deed of that date, conveyed to one W. A. Rideout the lot in controversy in this suit; and that the said Rideout, to secure certain deferred payments of the purchase money therefor, executed to one William G. McDowell, trustee, a deed of trust on said property (the wife of said Rideout joining in said trust deed), which trust deed bears date the 19th day of April, 1889, and is duly recorded. That said W. A. Rideout and wife afterwards sold said property to John K. Peck & Co., and that a part of the consideration of said purchase of said parties from said Rideout was the assumption by said parties of said trust deed of said Rideout and wife above set forth. That afterwards the said John K. Peck and wife conveyed to R. C. McClaugherty, N. H. McClaugherty, and D. W. McClaugherty a one-fourth interest in said property to each, being the three-fourths undivided interest therein. Afterwards the said John K. Peck sold his undivided one-fourth interest in said lot to R. C. McClaugherty, the said R. C. McClaugherty in said purchase from said Peck assuming said Peck's part of said trust deed, and that afterwards said D. W. McClaugherty sold his undivided one-fourth interest in said lot to the defendant, and that the amount assumed by defendant is shown in the deed to him, and is part of the purchase money so recited to be paid by said W. A. Rideout to Joseph I. Doran, which is secured by said deed of trust of said Rideout and wife;

and that, when the defendant purchased said interest from plaintiff, the plaintiff, in pursuance of his agreement, conveyed the same to him with covenants of general warranty of title to said interest. That the said trust deed so executed by said W. A. Rideout and wife on said lot has never been paid off and discharged, and that said Joseph I.. Doran and the trustee in said deed of trust are necessary parties to this cause, and should be made such for a full determination of the matters in the cause; and that the said N. H. McClaugherty, R. C. McClaugherty, and John K. Peck, and their respective wives, should be made parties to the cause, and that said W. A. Rideout is a necessary party to the cause. He then sets out a number of judgments rendered at different dates, in favor of different parties, which appear on the judgment lien docket, which judgments he alleges were on said judgment lien docket before the execution of said deed from plaintiff to defendant for said interest in said lot or property, and all of said judgments were on said judgment lien docket at the time of the maturity of the bond or note sued on in this cause, and are still on said docket, and so far as the records of said office of said clerk show, and so far as defendant knows, none of said judgments have ever been satisfied, in whole or in part. Said defendant further says that he offered on the 14th of November, 1893, to pay off the bond then due, if he was in some way secured and made harmless of said liens, but this proposition was declined. He says, further, that he is able, willing, and ready to pay off said bonds, but cannot do so on account of said liens, and that he brings into court and tenders the amount of the said bonds so sued on in payment of said bonds, upon the condition that the said plaintiff be first required to pay off and discharge the balance of said liens against said interest in said property, and that said plaintiff do first do same, and he prays that plaintiff be required to so do; that he ought not to be required to pay any of the purchase money until all of said liens are satisfied, and he prays that a decree be entered compelling plaintiff to pay off all of said liens, or so much thereof that the amount of said bonds will discharge the balance of said liens, and save defendant harmless in the payment of said liens or said bonds, and that he be not required to pay the

costs of the suit, that his answer be taken and treated as a cross bill against the plaintiff, *etc.*

The plaintiff filed a special replication, putting in issue the allegations therein contained in the nature of a cross bill, which sets up affirmative matter or asks for affirmative relief. Depositions were taken in the cause, which were excepted to on the ground of want of sufficient notice, and on the 28th day of May, 1895, the cause was finally heard, the exceptions to the depositions were overruled, and the court, being of opinion that the plaintiff was entitled to the relief prayed for, proceeded to enforce the vendor's lien against the interest in said lot sold by plaintiff to D. N. Croft, ascertained the amount of said lien to be six hundred and ninety-seven dollars and thirty-three cents decreed against the defendant for that amount, with interest from the date of the decree, and directed that unless said amount, with interest and costs, was paid in twenty days, a special commissioner therein appointed should advertise and sell said interest in the lot aforesaid in the manner and upon the terms therein prescribed; and from this decree the defendant D. N. Croft obtained this appeal.

The first assignment of error relied on by the appellant is as to the action of the court in refusing to dismiss the plaintiff's bill on motion for the want of a proper order of publication in said cause, and upon the further ground of variance between the purposes of the suit as set out in the order of publication filed with the bill of plaintiff and the purposes set out in the bill. Referring to the order of publication, it appears that the object of the suit therein set forth is to enforce a vendor's lien in favor of the plaintiff, D. W. McClaugherty, against the defendant, D. N. Croft, reserved on an undivided one-fourth interest in a house and lot situated in the city of Bluefield, Mercer county, W. Va., known as the "Rideout Property," which vendor's lien amounted to about the sum of six hundred and sixty-five dollars and for general relief. This assignment of error does not appear to be relied on by the appellant in his brief, and, so far as we can see, there appears to be no defect in the order of publication, and it is presumed to have been waived.

The next point of error assigned and relied upon is the

action of the court in overruling the defendant's demurrer to the plaintiff's bill. As a ground of demurrer, it is suggested that in the purchase of the Rideout property, as appears from the allegations of the bill, the defendant assumed a small balance of purchase money against said property, but that the bill does not state to whom, and the party to whom this was to have been paid should have been made a party defendant to the cause. It does, however, appear from other portions of the record that said purchase money was due to Joseph I. Doran, and that the said property was conveyed to William G. McDowell, trustee, to secure the payment of the same; and it further appears that on the 28th day of March, 1895, a deed releasing said trust was executed and acknowledged by William G. McDowell, trustee, and Joseph I. Doran, in which they acknowledged the payment of the entire debt secured by said deed of trust, which release was duly recorded in the county court clerk's office of Mercer county on the 3rd day of May, 1895, and the decree complained of in this cause was not entered until the 28th day of May, 1895. In the case of *Core* v. *Wigner*, 32 W. Va. 278 (9 S. E. 36) (second point of syllabus), this being a suit to enforce the payment of purchase money under an executory contract, it was held that if at the date of the decree of sale the title, though originally defective, has become good by reason of the purchaser's possession under the statute of limitations, the court may go on to enforce the contract. In the case under consideration, the trust lien to secure said purchase money having been released before the decree complained of was rendered, there was no need of amending the bill by making Doran and McDowell parties. It is, however, claimed that the plaintiff should have been compelled to amend his bill by making all the lien creditors of the plaintiff parties to the suit. Was this necessary? It is contended that the members of the firm of Straley & Co. were necessary parties to the suit, for the reason that they had a considerable judgment against the plaintiff, D. W. McClaugherty, and it was error to decree a sale of the property without making them parties and without providing in advance for the payment of said judgment. Now, it is true that this judgment existed against the plaintiff, and was docketed before the plaintiff sold said

interest in said lot to the defendant; but it is also true that the defendant had notice of its existence, and yet he purchased the property, paid the cash payment of three hundred dollars, and executed his notes for the deferred payments of the purchase money, and accepted a deed containing a reservation of the vendor's lien to secure the deferred payments. It is true that the deed from D. W. McClaugherty and wife to D. N. Croft contains a covenant for further assurances of title, the effect of which is set forth in section 18 of chapter 72 of the Code; but nothing is claimed in the pleadings by reason of this covenant, the defendant in his answer making no reference to said covenant and claiming nothing by reason thereof. It in no manner appears or is alleged that the plaintiff is insolvent, or that he is not the owner of other real estate than that mentioned in the bill. A vendor's lien is different from a judgment lien in this: that a judgment lien bears equally on all the real estate of the defendant, while the vendor's lien only rests upon the particular property sold by the vendor. The mere fact of the existence of judgment liens against the lands of a vendor will not prevent him from enforcing his vendor's lien against a purchaser from him, unless it affirmatively appears that he is insolvent, or has no other lands sufficient to satisfy the judgment liens against him. If it were otherwise, a vendor seeking to enforce his vendor's lien against a purchaser would be compelled to pay off all judgment liens against him before he could collect his purchase money, although he may have been endeavoring to collect it for the express purpose of paying off such liens. So in the case of *Neeley* v. *Ruleys*, 26 W. Va. 686, this Court held that, "in a suit to enforce a vendor's lien, it is not error to decree a sale of land on which the lien for the purchase money is reserved, without other lienors being made parties, and the amount and priorties of their liens settled"; also that, "in a suit to enforce a vendor's lien, the defendant filed an answer averring there were many judgment liens against the plaintiff's lands, and that he did not have other lands, besides the tract sold the defendant, sufficient to discharge said liens, but did not aver that the plaintiff was insolvent. The court did not err in refusing to set aside an order of sale on this ground, nor in refusing to send the cause to a com-

missioner to inquire into the matters set up in the answer."
So, also, in the case of *Wamsley* v. *Stalnaker*, 24 W. Va.
215 (third point of syllabus), where the same was held in
substance as was subsequently held in the case of *Core* v.
*Wigner*, *supra*. See, also, the case of *Arnold* v. *Coburn*,
32 W. Va. 272 (9 S. E. 21), where it is held that, "in a suit
to enforce a vendor's lien on land, it is not error to decree
a sale of such land to pay said lien, without making other
creditors having subsequent liens thereon parties, and as-
certaining the amounts and priorities of their debts."
SNYDER, JUDGE, in the opinion says: "This Court has re-
peatedly decided that, in a suit to enforce a vendor's lien,
it is not error to decree a sale of the land on which such
lien exists before ascertaining the amounts of other liens on
the land and their priorities, because in such suit the doc-
trine which requires all the lienors in ordinary creditors
suit to be made parties does not apply." From these au-
thorities it is manifest that it was unnecessary to make
those holding judgment liens against the lands of plaintiff
parties to the suit, and that the court committed no error
in overruling the defendant's demurrer, and the court did
not err in refusing to require the plaintiff to amend his
bill by making the lien creditors of the plaintiff parties to
the suit.

The fifth errror assigned and relied on by the appellant
is as to the action of the court in overruling the motion of
the appellant to quash and suppress the deposition of the
plaintiff taken on his behalf, and in not sustaining said
motion and the exception of appellant to said depositions.
Now, it appears that an agreement was entered into in
writing between the plaintiff, D. W. McClaugherty, and
W. W. McClaugherty, attorney for the defendant, D. N.
Croft, that in the chancery suit of said D. W. McClaugh-
erty against D. N. Croft, the depositions then being taken
on behalf of the plaintiff were to be left open until a fu-
ture day, to be agreed upon by the parties thereto, or
until they could get together and finish the same; and that,
after the same were finished, then, if the said D. N. Croft
desired to take any depositions on his part, he should have
the right to do so, and that the hearing of the cause was
not to be objected to on account of said depositions of said
plaintiff and those on behalf of said D. N. Croft not having

been taken before the next term of court or during the term of the court. Now, it appears from the deposition of D. W. McClaugherty that in pursuance of this agreement, he requested W. W. McClaugherty, at least a half dozen times during eight days, to finish up the depositions, part of which time he was doing nothing, and each time he refused directly and indirectly to finish them; and the agreement being that they were to be finished before that term of the court, said witness living in the town of Princeton, where the deposition was being taken, the deposition was subscribed and closed, and at 5 p. m. the attorney for the defendant appeared and asked to proceed with the cross-examination of said witness, and the witness refused to appear, and the deposition was excepted to by defendant, and said exceptions were overruled by the court, and, under the circumstances, I think properly overruled. The fact that said deposition was read did not in any manner prejudice the defendant, for the reason that it relates exclusively to liens, by judgment and otherwise, created against the plaintiff prior and subsequent to the sale of said real estate to defendant, all of which were released before the date of the decree complained of; and if the defendant's motion had prevailed, and said depositions had been suppressed and excluded, the plaintiff would still have been entitled to the decree complained of for these reasons. My opinion is that the decree complained of should be affirmed, with costs and damages to the appellee, and I cannot concur in the opinion of the majority of the Court.

*Reversed.*