## SUBURBAN IMPROVEMENT CO. v. SCOTT LUMBER CO.

### No. 3505.

Circuit Court of Appeals, Fourth Circuit.

Oct. 21, 1933.

John A. Howard, of Wheeling, W. Va. (Howard & Howard, of Wheeling, W. Va., on the brief), for appellant.

Frank W. Nesbitt, of Wheeling, W. Va. (Russell G. Nesbitt, of Wheeling, W. Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is the second appeal in this case. On the first, we held the supplemental bill good as setting forth grounds for specific performance under one contract and for removal as cloud from title of lien asserted under another. 59 F. (2d) 711. On the hearing following remand, the District Court entered decree removing the cloud of which complaint was made, but specific performance was denied and complainant has again appealed. No complaint is made of the decree in so far as it relates to the cloud on title, but error is as-

signed to that portion of it which denies specific performance.

The relevant portions of the contract of which specific performance is asked are set forth in our former opinion. We there construed that contract and held that it was not a mere option but a binding contract of sale, under which the defendant was obligated to take and pay for the lots therein described. One of the provisions of the contract was that complainant should not sell any of the lots to any other person without the consent of the defendant. The supplemental bill, while alleging the sale of seven of the lots to one Bloch, did not set forth the circumstances under which the sale was made (see Brimmer v. Salisbury, 167 Cal. 522, 140 P. 30, 34); and in view of the allegation that the complainant had been "at all times able, ready and willing to perform its part of the contract," and of the fact that the court below in denying relief had proceeded on the theory that the contract was a mere option, we thought that the bill should be held sufficient and the facts developed so that it might be determined, in the light of the proofs, whether complainant was entitled to the equitable relief prayed.

After the case was remanded defendant filed answer to the supplemental bill alleging, not only that the conveyance to Bloch was made without the consent of defendant and in violation of the terms of the contract, but also that complainant had prior to the conveyance to Bloch conveyed a valuable lot to the Bachmann Realty Company and before the filing of the supplemental bill had conveyed two lots to one Goetze. Defendant alleged that all of these conveyances had been made without its consent and in violation of the express terms of the contract, and that complainant was not entitled to specific performance for that reason. The contention of complainant was that the conveyance to Bachmann was made with defendant's consent and that the other conveyances were made in an effort to mitigate damages arising out of defendant's breach of contract. After the filing of the answer and before the case came on for hearing, complainant obtained options from all the persons to whom conveyances had been made, and averred its ability to acquire title and make conveyance in accordance with the terms of the contract.

With respect to the conveyance to Bachmann, it appears that this was made September 28, 1928, before any controversy had arisen between complainant and defendant. Defendant denies that it consented to this conveyance or that it acquired any knowledge thereof until shortly before the filing of its answer to the supplemental bill. The District Judge found in accordance with defendant's contention in the matter; and, as he saw and heard the witnesses and was in a better position than we are to solve the question of veracity involved, we must accept his findings. The rule is well settled that in such case the findings of the District Judge will not be disturbed unless clearly wrong. Fidelity-Phenix Fire Ins. Co. v. Benedict Coal Corp. (C. C. A. 4th) 64 F.(2d) 347, 348; Virginia Shipbuilding Corporation v. United States (C. C. A. 4th) 22 F.(2d) 38.

With respect to the alleged breach of contract by defendant, it appears that defendant duly took and paid for the lots which it was obligated to take during the year 1928. In the spring of 1929 complainant became indebted to defendant, for construction work performed under another contract; and endeavored to induce defendant to accept lots in liquidation of this indebtedness, but defendant refused to do so. On May 1st, complainant's president wrote a letter to defendant in which he stated that in an interview which he had had the preceding day with defendant's vice president, the latter had announced that defendant had decided that it would refuse to purchase lots of the complainant for the year 1929 as required by the contract. In a letter of May 4th, in reply to complainant's letter of May 1st, defendant denied that it had refused to purchase lots under the contract or that any statement had been made in the conversation to that effect. It took the position, however, that the contract was an option and that it was not repudiating or surrendering any of its rights thereunder. The material portions of this letter are as follows:

"We did not state that the Scott Lumber Company does not intend to purchase of the Suburban Improvement Company, lots aggregating in price at least $20,000 within this calendar year, nor did we state that our Board of Directors had taken any action on this matter. As a matter of fact, our Board of Directors has never had the matter of abandoning this option under consideration at any time. We did state, however, upon your request that we buy and pay for additional lots at this time, that our Board of Directors would not favor taking additional lots at this time as we now have three lots which have not been marketed, but that we are pushing the house now under construction upon one of these lots, just as fast as weather conditions permit, and that upon making sale we intend to immediately start another house upon one of

the other two lots which we now own, and that we intend to continue on this line, and hope that before the end of the year, they will be marketed and that during this calendar year we will be ready to purchase additional lots under our option with your company. As we stated in our conversation, we are not repudiating or surrendering any of the terms of the option which we have with you covering the purchase of lots in Howard Place.

"However, we do wish to call your attention to the fact that we take issue with you upon the interpretation which you in your letter attempt to place upon the contract in question. You are in error when you say that under that contract, this company has promised to pay to your company $20,000.00 in each calendar year. The contract was prepared by you and submitted to us for our signature as an option contract, giving to us the exclusive option to purchase lots, subject, however, to the condition that if within any calendar year, our purchases do not amount to $20,000.00, we may lose those optional rights. Your intimation that you reduced the price of the lots to us in consideration of an agreement on our part to purchase to a minimum of $20,000.00 in each year, is inaccurate. Your present effort to place an interpretation on the contract, the effect of which would be to bind us to purchase all of the lots on the plat at the rate of at least $20,000.00 each year, is not justified either by the terms of the contract itself, or by the distinct understanding had between us at and before the time of its execution. * * *

"With reference to the last paragraph in your letter as previously noted in this letter, the matter of taking additional lots has not been under consideration by our Board of Directors, and according to the terms of the option, we see no reason for taking the matter up with the Board of Directors at this time, as according to the terms of the option, we are allowed the entire time of the calendar year 1929 in which to exercise our rights to take additional lots."

There was no evidence to show that defendant prior to the conveyance to Bloch ever notified complainant that it would not take its quota of lots for the year 1929; and the judge has found that at no time prior to the bringing of the suit or the breaching of the contract by the conveyance to Bachmann and Bloch had defendant refused or failed, or "threatened to refuse or fail," to fulfill any of its obligations under the contract. He found also that the conveyances to which we have referred were made without reservation

of right to reacquire the lots conveyed; that complainant had breached the contract by making the conveyances; and that the securing of options entitling it to repurchase the lots did not cure its default.

Under these circumstances, we think that the judge below was correct in holding that complainant was not entitled to ask specific performance of the contract. Not only had it rendered itself unable to perform the contract on its part, but in doing so it had violated one of the express provisions of the contract, i. e., that it would not sell to any other person any of the lots embraced therein without the consent of the defendant. The letter of May 4th was certainly no excuse for the sale to Bachmann which occurred some months before; and we think it was equally unavailing as an excuse for the conveyance to Bloch and Goetze. Defendant did not in that letter refuse to take the lots which it was obligated to take in the year 1929. On the contrary, it expressly reserved the right to decide upon its course of action within the time allowed by the contract. Merely denying that it was obligated under the contract, and contending that same constituted an option, was by no means equivalent to refusing to take the lots which it was obligated to take. To constitute an "anticipatory breach," it must appear that the party bound under a contract has unequivocally refused to perform. Dingley v. Oler, 117 U. S. 490, 503, 6 S. Ct. 850, 29 L. Ed. 984; Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953; Smoot's Case, 15 Wall. 36, 21 L. Ed. 107; Frank F. Pels Co. v. Saxony Spinning Co. (C. C. A. 4th) 287 F. 282; A. L. I. Restatement of Contracts, § 318 (a). This the defendant did not do.

As there was no breach of the contract on the part of the defendant, by way of anticipation or otherwise, complainant was bound to hold itself in readiness to perform and not to do anything which would amount to a violation of the contract on its part. And we think it clear that the sale to others of lots which it had contracted to sell to defendant, irrespective of the specific provision in the contract against such sale, constituted a breach of the contract on the part of complainant. As said in A. L. I. Restatement of Contracts, § 318 (b): "Except in the cases of a contract originally unilateral and not conditional on some future performance by the promisee, and of a contract originally bilateral that has become unilateral and similarly unconditional by full performance by one party, any of the following acts, done without justification by a promisor in a contract before he has

committed a breach under the rules stated in §§ 314–315, constitutes an anticipatory repudiation which is a total breach of contract: * * * (b) transferring or contracting to transfer to a third person an interest in specific land, goods, or in any other thing essential for the substantial performance of his contractual duties. * * *" But here we need not go into this question of anticipatory breach; for these conveyances were in direct violation of the eleventh paragraph of the contract, which is as follows: "Eleventh: It is understood and agreed that this contract constitutes an option, which divests the party of the first part of its right to make sale to any other party of any of the lots included herein, during the life of this contract, but it is agreed, however, that other sales thereof may be made by mutual agreement of both parties hereto, but not without the consent of the party of the second part."

■ Since, therefore, complainant itself had breached the contract and was in default thereunder at the time of the filing of the bill, it was not in position to ask a decree requiring the defendant to perform. Pomeroy's Equitable Remedies, § 805; Williston on Contracts, vol. 2, § 878; 58 C. J. 1067, 1069; 25 R. C. L. 336; Bank of Columbia v. Hagner, 1 Pet. 455, 465, 7 L. Ed. 219; Rutland Marble Co. v. Ripley, 10 Wall. 339, 357, 19 L. Ed. 955. As said by the Supreme Court in the case last cited: "Such a decree is not a matter of right. It rests in the sound discretion of the court, and generally it will not be made in favor of a party who has himself been in default. In Story's Equitable Jurisprudence, it is said that 'in cases of covenants and other contracts, where a specific performance is sought, it is often material to consider how far the reciprocal obligations of the party seeking the relief have been fairly and fully performed. For, if the latter have been disregarded, or they are incapable of being substantially performed on the part of the party so seeking relief, or from their nature they have ceased to have any just application by subsequent events, or it is against public policy to enforce them, courts of equity will not interfere.'"

■ Even where there is no express provision, as there is here, against conveyance to other persons of property which is the subject of the contract, it has been repeatedly held that a vendor cannot enforce specific performance, where subsequent to the execution of the contract he has conveyed a substantial part of the property therein embraced to a third person. Core v. Wigner's Heirs, 32 W. Va. 277, 9 S. E. 36; Marsh v. Lorimer, 164 La. 175, 113 So. 808; Strater v. Flynn (N. J. Ch.) 91 A. 591; Griffey v. Lubben, 196 Iowa, 465, 193 N. W. 410; Groden v. Jacobson, 129 App. Div. 508, 114 N. Y. S. 183, 185; Brimmer v. Salisbury, 167 Cal. 522, 140 P. 30, 34; 58 C. J. 1069; Williston on Contracts, vol. 2, § 878. A fortiori he cannot prevail where the contract expressly forbids such conveyance; for in such case he is confronted, not merely by the fact that he has incapacitated himself to perform his undertaking, but also by a breach of one of the express covenants of the instrument which he seeks to enforce.

■ Complainant insists that, because it has acquired the option to which we have referred, it has placed itself in position to perform before entry of decree, and is entitled to specific performance on that ground. It may well be doubted whether merely acquiring an option on property would place a vendor in position to enforce specific performance in any case; for he must be ready, willing, and able to convey title and such ability is manifestly not shown by the possession of a mere option to purchase. But here the acquirement of the options certainly cannot wipe out the breach of the contract of which complainant has been guilty. And, while the doctrine of perfecting title before decree is well recognized in cases where the vendor does not have title at the time of the contract, it seems well settled that that doctrine has no application to a case where the vendor, having title at that time, subsequently conveys it to a third person. In such case the conveyance is an act inconsistent with the recognition of the contract and, as we have seen, amounts to a breach. The distinction is thus stated by Prof. Williston, vol. 2, § 878: "If the seller owned the property in question at the time when the contract was made, but subsequently disposed of it, his conduct has a double aspect. On the one hand he is diminishing his ability to carry out the contract even if he so desires and, on the other hand, his conduct gives some evidence that he does not intend to carry it out. Regarded in either aspect, the transfer should excuse the buyer from continuing the contract. It has been suggested in some cases, especially in California, that since it is perfectly legal to make a contract to sell property which one does not own, and since the seller may regain the property which he has disposed of before the time for performing his contract arrives, the buyer should not be excused. But it is obvious that a conveyance subsequent to the contract imposes a risk of inability which the

buyer did not assume, and it is also clear that such a conveyance justifies an inference of intent not to perform which would not be warranted by a lack of title at the time the contract was originally entered into; and this distinction is now recognized by the California Supreme Court."

The distinction is clearly drawn in the case referred to by Prof. Williston, Brimmer v. Salisbury, supra, as follows: "Where a vendee contracts with one having none or an imperfect title, he contracts in the hope or expectation that the vendor may be able to perfect the title. Such is not the case where the vendor has title and thereafter parts with it. Of the essence of the contract is the security to the vendee, in his payments, of the title which the vendor has, and, if the vendor parts with that title to the impairment or destruction of that security, the vendee may be heard justly to complain, and it is, of course, no answer to say that the vendor thereafter may be able to go into the open market and repurchase the property."

And we see nothing to help the position of complainant in the theory that, after breach by defendant, it had the right to sell the lots in order to reduce the damages for which defendant would be liable. As we have seen above, there was no breach of the contract on the part of defendant, certainly at the time of the conveyance to Bachmann and Bloch. And, even if there had been a breach on the part of defendant, the complainant could not sue for specific performance after electing to treat the contract as broken and proceeding on the theory that the rights of defendant thereunder were at an end. 6 R. C. L. 1026; 13 C. J. 651, 653; Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 589, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580; Bare v. Victoria Coal & Coke Co., 73 W. Va. 632, 80 S. E. 941.

For the reasons stated, the decree appealed from will be affirmed.

Affirmed.