# CHARLESTON.

S. F. SHINN, EXR. ETC. v. AURORA WESTFALL, et als.

Submitted December 11, 1923.  Decided December 22, 1923.

1. EQUITY—*Where Report of Commissioner is Not Excepted to for Premature Reference, Error Waived.*

   Where the genuineness of a negotiable promissory note made · by a decedent is one of the issues raised by the pleadings in a chancery cause instituted by the executor to administer the estate under the will, and a reference is had to a commissioner in chancery to ascertain and report upon the validity of the note as a debt against the estate, without objection from any of the parties, and a full, fair and complete hearing is had before the commissioner who makes report on which are en-dorsed exceptions challenging the correctness of his findings, but not excepted to because of the prematureness of the reference; this court will consider the error of premature refertnce waived and will accord to the report and the decree thereon their usual weight.  (p. 295).

2. APPEAL AND ERROR—*Findings by Commissioner in Chancery as to Validity of Signature to Note Not Disturbed.*

   In such case, where the admissible evidence as to the genuineness of the decedent's signature to the note is conflicting and there is ample evidence in favor of its validity, the finding of the commissioner and confirmation by the decree will not be disturbed by the appellate court unless clearly erroneous. (p. 297).

3. EXECUTORS AND ADMINISTRATORS—*Execution of Note Established, Where Genuineness of Decedent's Signature Shown.*

   When the genuineness of the decedent's signature to the note is proven, the signing of the note by him is sufficiently established.  (p. 298).

4. SAME—*Burden of Showing Want of Consideration Stated; Want of Consideration Not Shown in Suit on Note Against Decedent.*

   The genuineness of the maker's signature having been established, the note is *prima facie* evidence that it was given for value, and the burden showing want of consideration rests upon him who attacks it on that ground.  A case where that burden has not been successfully carried.  (p. 298).

Appeal from Circuit Court, Jackson County.

Action by S. F. Shinn, executor, etc., against Aurora West-
fall and others.  Judgment for plaintiff, and defendants ap-
peal.

*Affirmed.*

*Lewis H. Miller* and *S. P. Bell,* for appellants.
*W. F. Boggess,* for appellee.
*J. L. Wolfe* and *M. C. Archer,* for G. W. Shinn.

LIVELY, JUDGE:

The decree adjudges valid a note of $1,000, and directs its
payment out of the estate of C. P. Shinn, deceased.

The sole controversy is over the validity of this note.   The
bill is by the executor, is for the purpose of carrying out the
provisions of the will, and alleges a deficiency of personal es-
tate for the payment of the debts including the note in ques-
tion, and prays for a sale of a part of the real estate for that
purpose; a settlement of the executorial accounts of plaintiff
and an ascertainment of the widow's rights in the estate; and
for general relief.   The answer denies that there is a de-
ficiency of the personal estate, and avers that there is more
than enough personal estate to pay the just debts; and denies
that decedent owed the note in question, or that he ever ex-
ecuted it, and avers that if G. W. Shinn has such a note there
was lack of consideration.   The genuineness of the signature
of C. P. Shinn, the maker of the note, is denied by affidavit
filed.   Upon the coming in of the answer the cause was re-
ferred to a master in chancery to report, among other mat-
ters, whether the note held by G. W. Shinn was a valid debt
against the estate.   The note was the only contested claim
against the estate, and the evidence in favor of and against
its validity was taken before the master, who in due time
reported it as a valid claim against the estate.   Exceptions
thereto by the contesting devisees were overruled and the de-
cree, complained of, entered.

The errors assigned are: (1) overruling the demurrer of
Aurora Westfall and others to the bill; (2) decreeing the
$1,000 note held by G. W. Shinn a valid and existing obli-
gation against the estate of C. P. Shinn, deceased; (3) in

overruling the exceptions to the commissioner's report; and (4) rendition of the decree of November 25, 1922.

The third and fourth assignments of error are necessarily covered by the second error assigned. The exceptions to the commissioner's report are to the finding of the validity of the $1,000 note; and finding that the real estate will not in five years rent for a sufficient amount to pay the indebtedness. The sufficiency of the rental within that time depends upon whether the $1,000 note shall be paid.

C. P. Shinn died August 3, 1921, leaving a will dated April 27, 1921, in which he directed payment of his just debts, and gave and devised his entire estate to Allena Shinn Parsons, Geo. W. Shinn, Emma Zora Shinn Nuna, Oda Shinn Lysle, Odelia Shinn Reed, Jessie Shinn Elliott and Aurora Shinn Westfall, each to share equally. The devisees are children of the deceased. His wife, Ellen Shinn, survived. S. F. Shinn, named as executor, who qualified, is a near relative of the deceased. After the qualification of the executor, G. W. Shinn notified him that he held a note against the estate for $1,000. The personal estate in the hands of the executor amounted to $1,592.71, from which he expended $769.52 for funeral expenses and like charges, leaving a balance of $823.19 in his hands, and it became apparent that if he had to pay the $1,000 note together with other outstanding claims and his commissions, he would be compelled to resort to the real estate which consisted of about 54 acres of land in Roane county and a house and lot in the city of Parkersburg. This suit was then instituted by him for the purposes above set out.

It is asserted that the demurrer should have been sustained because the bill fails to allege that plaintiff is acting as executor; and that it does not show that the personal estate is insufficient for the payment of the debts. The bill is brought by the executor, exhibits the will and alleges that he qualified as executor of the estate on the 23d of August, 1921, and exhibits a certificate of his appointment and qualification as such. The answer admits that the plaintiff is duly qualified "and is now acting as executor of said last will and testament." The bill sets out the amount of personal prop-

erty which came into the hands of the executor and alleges that the indebtedness claimed against the estate, naming the debts, is in excess of the personal estate and that it will be necessary to resort to the real estate for payment. The demurrer to the bill was properly overruled.

. The point is raised that it was error for the court to refer the cause to a commissioner to ascertain the validity of the $1,000 note; that the answer of contestants of the note raised the question of its genuineness and validity; that this was an issue which should have been decided by the court before reference to a commissioner. No objection appears to have been made to the order of reference, and no question of premature reference, raised until after the decree was pronounced and the cause reached this court. The parties appeared before the commissioner and introduced their evidence touching upon the valdity of the note, and both sides have had a full and complete hearing on the matter in litigation. It is true that a cause cannot be referred to a commissioner for the purpose of permitting the plaintiff to establish the allegations of the bill, and where the matter in issue is one for a decision by the court and not by a commissioner. However, where the reference to the commissioner is made without objection and where it is apparent that the parties have had a full and complete hearing before the commissioner, the technical objection comes too late after an adverse decision on the merits. *Jones* v. *Rose,* 81 W. Va. 177; 94 S. E. 41; *Dewing* v. *Hutton,* 48 W. Va. 576; 37 S. E. 670.

We now come to the next question involved, whether the note is a valid obligation against the estate. The answer denying the validity of the note is not sworn to; but the affidavit of Mrs. Yager says that the signature of C. P. Shinn to the note is not his signature, and she is one of the answering defendants. This puts the genuineness of the signature at issue. Sec. 40, chap. 125, Code. Logically, the first question to be determined is under this issue. If the note be not that of C. P. Shinn, and his name thereto is a forgery, then the question of the consideration therefor and all others arising by reason of the note are moot questions. The note is as follows:

"$1,000.00          Ripley, W. Va., Nov. 2, 1920.
    At my death, I promise to pay to the order of G. W.
Shinn, One Thousand Dollars, For value received, ne-
gotiable and payable at The First National Bank of Rip-
ley, West Virginia.

                                        C. P. SHINN."

C. P. Shinn was very aged at the time of his death, and
about the year 1916 owned considerable land in Roane
county, a large part of which he disposed of prior to his
death, and at the time of his death he owned the 54 acres
described in the bill. He was a pensioner of the federal gov-
ernment, and received oil and gas rentals from some of his
lands. About the year 1916, he purchased a house and lot
in Parkersburg, moved there and continued his residence in
that city until his death.

To sustain the note, G. W. Shinn and his two sons, R. A.
Shinn twenty-five years old and C. O. Shinn thirty years
of age, testified that on the day of the execution of the note
C. P. Shinn, the maker thereof, was at Ripley, Jackson
county, attending an election, and called them into a ware
room of C. O. Shinn's grocery store, where R. A. Shinn
prepared the note at the request of his grandfather and
where his grandfather signed it in the presence of all of
them. They saw him sign the note, and detail the con-
sideration therefor. It appears from their evidence that
about 1916 on another occasion in the same wareroom, C. P.
Shinn had executed a note to G. W. Shinn for $500 for
borrowed money and that this former note entered into the
consideration of the new note. According to their evidence
G. W. Shinn had been looking after his father's interest in
the farm lands a portion of which had been rented since the
old gentleman moved to Parkersburg, and that the addi-
tional consideration above the old note was services so
rendered. It appears also that each of the two young men
had rendered some services to their grandfather in trans-
porting him to and from Parkersburg, one to the amount
of $10, and the other to the amount of $30, and these sums
were a part consideration of the note, and direction was given
to their father by the grandfather to settle these small
amounts with his two sons, which he did after the note was

executed.  It will be observed that this evidence goes not
only to the execution of the note, the genuineness of the
signature, but also to the consideration.  It is contended by
appellants that this evidence in its entirety was incompetent,
being the detailing of personal transactions with the de-
ceased.  Proper objections and exceptions were taken to its
introduction.  The evidence of G. W. Shinn is incompetent
and should not be considered.  It is not so clear that the
evidence of the two young men, the one who prepared the
note and the other who witnessed the signature and transac-
tion, is incompetent.  It is argued on behalf of the appellants
that they had an interest in the making of the note by reason
of the claims for services which they had against the old
gentleman for the $10 and the $30 sums, and that they
stand in the shoes of assignors ' of these sums to their
father who paid them.  On the other hand the appellees
argue that these small debts have been paid by the father
before suit, that the two sons have no interest in the result
of the litigation, are not and never were assignors of the
debts to their father, and therefore their evidence is compe-
tent and not prohibited by sec. 23, chap. 130, Code, which
says:

> "No party to an action, suit or proceeding, nor any
> person interested in the event thereof, nor any person
> from, through or under whom any such party or inter-
> ested person, derives any interest or title by assignment
> or otherwise, shall be examined as a witness in regard to
> any personal transaction or communication between such
> witness and a person at the time of such examination,
> deceased,"

However, the genuineness of the signature is supported by
evidence about which there is no controversy.  Quite a num-
ber of experts were introduced by both sides who testified
that the signature is genuine, and to the contrary.  The cash-
iers of the three banks in Ripley, all familiar with C. P.
Shinn's signature and with whose banks he had transacted
business, testify that the signature is genuine.  Straley, cash-
ier of the First National, at which the decedent kept his ac-
count for many years, had known him all his life and knew

his signature well. These witnesses had been in the banking business at that place from eighteen to thirty years. The contestants of the note, children of the maker, with the exception of two or three, say the signature is' not that of their father, and give their reasons therefor. Jones, an experienced banker of Parkersburg and an expert, says the signature is not genuine, judging by comparison with other true signatures. On the other hand a portion of the devisees and others who were not interested and who were non-experts say the signature is genuine. The note itself and many other writings to which Shinn attached his signature, and which signatures are agreed to be genuine, were before the commissioner and the lower court, and are now before us. Without attempting to analyze the expert and non-expert testimony, we think the finding of the commissioner and the circuit court on this point cannot be disturbed. Both are entitled to peculiar weight. Striking out the testimony of G. W. Shinn and his two boys as to the actual signing of the note, we think there is sufficient evidence to justify the lower court in finding that the signature to the note is genuine. We have decided many times that where the finding of a question of fact is based upon conflicting depositions or oral testimony, the finding of the commissioner in the first place or of a court thereon is entitled to peculiar weight and will not be disturbed unless clearly erroneous. *Baughman* v. *Hoffman,* 90 W. Va. 388; 1 Michie's Encyc. Dig. 620, and cases cited.

The point is made by appellant's counsel that there is no competent evidence of the execution of the note. If the signature be genuine, it follows that the maker executed the note.

Was there sufficient consideration? Appellants assert that the genuineness of the signature being denied by affidavit in support of the answer, the burden of proving consideration was shifted to the holder of the note under authority of *Horner* v. *Amick,* 64 W. Va. 172; 61 S. E. 40. That case does not so hold. Where the signature to a paper is denied by proper pleading the burden is upon the holder to prove the genuineness of the signature. The burden rests upon him who asserts. The statute, chap. 125, sec. 40, dispenses

with proof of the signature unless denied under oath.   When denied under oath, he must bring in proof which the statute otherwise dispensed with.   The burden remains where it always was.   The statute is a rule of evidence, dispensing with proof of the hand writing when not denied, and requiring proof of him who asserts, when it is denied under oath.   But such denial does not place upon the holder the burden of showing consideration for the note; nor does it do so because lack of consideration is charged in the affidavit.   The note promising to pay for value received and signed by the maker, his signature being genuine, imports consideration.   The note is negotiable; and sec. 24, chap. 98A, Code, says:

> "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value."

The burden of proving lack of consideration of a negotible note rests upon him who asserts it, the appellants in this case.   Have they overcome the *prima facie* presumption of consideration?   It is conceded that if the evidence of R. A. Shinn and C. O. Shinn be admissible, consideration is firmly established.   But if we strike out this evidence we fail to find sufficient evidence offered by appellants to rebut the presumption of valid consideration.   They rely upon the declarations made by G. W. Shinn to the executor and to Mrs. Parsons to the effect that the note was given to him or he would not have it.   Mrs. Parsons told him he had this note a short time after his qualification as executor, he said that the testator had given him 22 acres of land in a former will but had changed the will and gave him the note in place of it, and that he was to have an equal share with the rest of the children and $1,000 besides.   The executor said Shinn remarked that he "gave it to him."   When asked if Shinn told him it was a gift he would not go to that extent but said Shinn told him his father "gave it to him."   Shinn's explanation of this conversation is that he told the executor that his father had given him this note and said nothing about the consideration; he said the note was given to him or he would not have it.   Mrs. Parsons

says he told her that "father didn't owe me a cent. He just give the note to me." This is flatly denied by Shinn, who says he had a conversation with his sister in which she said she had discussed with some one else the fact that he claimed having such note, and she had made the remark that he didn't steal it, whereupon he answered to her, "No, he give it to me." There is evidence from others, not members of the family, that G. W. Shinn had been looking after the interests of his father in the land in Roane county, a portion of which was rented, and had purchased and paid for some grass seed for use on his father's land. Does the evidence of the executor and Mrs. Parsons, in light of the testimony of G. W. Shinn as to the conversations, overcome the presumption of consideration stated on the face of the note and implied by law? On this point both the commissioner and the chancellor have decided that the burden has not been overcome. We think the declaration made to the executor by Shinn is consistent with his ownership of the note for a consideration and that it may be reasonably concluded that he meant the note was signed and handed to him, and not that it was a gift without consideration. The evidence of Mrs. Parsons is direct that it was a gift, but this conversation is denied. We do not think there is sufficient strength in this evidence of want of consideration to justify us in reversing the decision of the commissioner and the lower court in that regard.

We have not discussed the admissibility of the evidence of R. A. Shinn and R. O. Shinn as to what transpired when the note was given in the ware room. It is not necessary to a disposition of the cause; there is sufficient evidence to prove the genuineness of the signature to the note, and the commissioner and the lower court having decided in favor of its genuineness upon the conflicting evidence, that finding will not be disturbed. The same may be said as to the finding of the commissioner and the court on the issue of consideration; but we think the evidence of the executor and Mrs. Parsons fails to overcome the presumption of consideration, even should it have been submitted to us in the first instance.

The decree will be affirmed.

*Affirmed.*