JOHN B. ROSIER *v.* MINNIE G. McDANIEL

(No. 9488)

Submitted January 18, 1944. Decided February 8, 1944.

*Charles C. Scott* and *Haymond Maxwell,* for appellant.
*Powell, Clifford & Jones,* for appellee.

Rose, President:

From a final decree of the Circuit Court of Harrison County in favor of John B. Rosier and against Minnie G. McDaniel this appeal was awarded on the petition of the latter.

By deed dated April 29, 1925, John B. Rosier and wife conveyed to Minnie G. McDaniel Lots 7, 8 and 9 out of land of the grantor situate at Hepzibah in Harrison County on which there was a substantial dwelling. The purchase price was $3,500, of which $500 was paid in cash and the residue, secured by a vendor's lien, was to be paid in ten equal annual installments of $300 each, with interest payable annually, for which payments joint and several negotiable notes were executed by Mrs. McDaniel and her husband, A. G. McDaniel. This deed contained covenants of general warranty and the following provision:

> "It is understood and agreed that this conveyance is made subject to the rights vested in John M. Camden by deed made to him by Boyd M. Allen, dated November 1, 1889, and recorded in the office aforesaid in Deed Book No. 80 page 180, and also subject to the rights vested in the Hope Naturan Gas Company by a certain lease for oil and gas purposes made to the said Company by James F. Allen dated August 20th, 1904, and recorded in the office aforesaid in Deed Book No. 149, page 270."

The first two purchase money notes were paid in due

course; but, about the time of the maturity of the third, there developed certain sinking of a street adjoining said lots, and some breaking and slipping of the lots themselves, resulting in the destruction of a water well thereon and some breaking and distortion of the house. The defendant concluded that these land subsidences were caused by the removal of coal from beneath the lots and adjoining land, and discontinued payments of purchase money and taxes on the lots, which were sold in 1930 for 1928 taxes, and purchased by one Martin. The purchaser assigned to Rosier, who obtained and recorded a tax deed for the lots dated November 26, 1932.

Various conferences seem to have taken place between Rosier, on the one hand, and Mrs. McDaniel and her husband, on the other, the latter two claiming damages for the injuries to their property by the subsidence of the lots and the adjoining land and streets. Under date of October 5, 1933, possibly as a result of these negotiations, Rosier executed a written contract of sale of the same lots and also Lots 4, 5, and 6, to Raymond P. McDaniel, a son of Minnie G. McDaniel and A. G. McDaniel, who was then and still is a member of the United States Naval Forces, for a consideration of $2400, being the exact balance unpaid under the deed to Mrs. McDaniel. This purchase price was to bear interest from date payable semi-annually, and to be paid in monthly installments of $15 each. The contract bears the name of Raymond P. McDaniel signed thereto by his father, A. G. McDaniel. Apparently he knew nothing of the transaction.

The McDaniel family continued to occupy the property and monthly installments under this contract were paid to April, 1941. In November of that year Rosier instituted before a justice of the peace an action of unlawful detainer against Minnie G. McDaniel and Raymond McDaniel for recovery of possession of the lots, claiming that the contract with Raymond by its express terms, had become null and void by default in the payment of

six successive monthly installments therein provided. This action was dismissed when Rosier, upon consulting an attorney, was advised that he had no legal title to the three lots conveyed to Mrs. McDaniel, but that his tax deed was in legal effect a mere redemption from the tax sale, by reason of the fact that he, the grantee therein, was the holder of a lien against the lots and thus had the legal right to redeem the same from the sale for taxes. He thereupon instituted the present suit.

The bill of complaint is brief and simple. It makes only Minnie G. McDaniel a party defendant and seeks nothing but the enforcement of the vendor's lien reserved in her deed, claiming an aggregate of $2483.54 to be due. The bill recites, however, the existence of the tax deed and alleges that it operated merely as a redemption from the tax sale.

The court on June 6, 1942, overruled a written demurrer to the bill, which action is not complained of. By the same order the court referred the cause to a commissioner in chancery to take and report an account showing all real estate owned by the defendant, the liens thereon, whether such real estate would in five years rent for a sufficient sum to discharge the liens, and such other matters as the parties or the commissioner might require, and required the commissioner to give the notice to creditors required by Code, 56-7-3.

No time was given by the decree to the defendant for answering. On June 12, however, the defendant by counsel moved the court for leave to file her answer, and, without any request or showing therefor, was granted fifteen days from that date within which to file her answer, and the commissioner was directed to suspend proceedings under the decree of reference until August 2. On August 3 the defendant filed in open court her answer and cross-bill, the order reciting that this pleading had been filed or lodged in the office of the clerk of the court on June 23. The plaintiff filed thereto a written replication.

The commissioner executed the decree of reference and reported a balance of $1831.03 due under the vendor's lien. Exceptions to this report were overruled and a decree of sale entered accordingly.

Five days after the decree of sale, Raymond P. McDaniel, represented by the same counsel as the defendant, appeared and tendered a petition which he asked to be treated as an answer and cross-bill in this cause, which, upon objection by the plaintiff, was rejected by the court.

The decree of reference and the proceedings thereunder were irregular and, in the aggregate, prejudicial to the appellant. The reference, if it had been proper, was prematurely made. Defendants had by statute fifteen days from the overruling of the demurrer within which to answer. Code, 56-4-56. No decree of reference could be made during that time. *Billingslea* v. *Manear,* 47 W. Va. 785, 35 S. E. 847; *Goff* v. *McBee,* 47 W. Va. 153, 34 S. E. 745; *Gist* v. *The Virginian Ry. Co.,* 79 W. Va. 167, 90 S. E. 554; *Moreland* v. *Metz,* 24 W. Va. 119. Not until the expiration of the period given a defendant for answering, by statute or by the court, could the judge, in any suit, know what issues might be raised, or what question might arise for solution, before the cause could be referred to a commissioner for any purpose. If no answer should come in within the fifteen days, by statute the plaintiff would have been entitled to the relief sought in his bill. Code, 56-4-56. He would have had only to produce his notes as required by Code, 56-7-6, to obtain his decree. No convention of creditors is necessary or proper in a vendor's lien suit. *Hart* v. *Larkin,* 66 W. Va. 227, 66 S. E. 331; *McClaugherty* v. *Croft,* 43 W. Va. 270, 27 S. E. 246; *Long* v. *Perine,* 41 W. Va. 314, 23 S. E. 611; *Neeley* v. *Ruleys,* 26 W. Va. 686; *Cunningham* v. *Hedrick,* 23 W. Va. 579. An improper reference to a commissioner in such suit, is not only superfluous, but injurious as subjecting the defendant to unnecessary costs in the execution of the decree, interest occasioned by the delay, possible additional

taxes and other expense and trouble incident to pro-
longed litigation.

But the defendant did in fact answer. This answer
raised by way of defense very substantial and intricate
questions of law and fact, which could only be deter-
mined by the court, not by the commissioner. These in-
cluded a claim for damages for fraud in procuring de-
fendant to purchase the land; an alleged settlement be-
tween the parties by which the plaintiff agreed to repair
the well and to abate $1000 from the purchase price; cer-
tain clouds on the title to her lots; which she asks to
have removed; an alleged novation of the deed and con-
tract, by which the lots were to be conveyed to a third
party to be named by the defendant; a denial of any
balance due the plaintiff, and suggested other parties al-
leged to be necessary. All these defenses plaintiff denied
by replication. The court made no pretense of referring
these new issues to the commissioner. He could not have
done so had he so attempted. It does not lie in the power
of the judge of a court of equity either to ignore, or to
delegate to a commissioner the primary duty of deciding,
the fundamental issues in a cause. *Neely* v. *Jones,* 16
W. Va. 625; *Goff* v. *McBee,* 47 W. Va. 153, 34 S. E. 745;
*Currence* v. *Currence,* 123 W. Va. 599, 18 S. E. 2d 656.
"When the answer to the bill fully denies all the material
facts alleged as the basis for such lien, it is reversible
error for the court to decree a reference to a commis-
sioner to enable plaintiff to make out his case." *Gist* v.
*The Virginian Ry. Co.,* 79 W. Va. 167, 90 S. E. 554. See
*Blumberg Bros.* v. *King,* 98 W. Va. 275, 127 S. E. 47;
*Mathieson Alkali Works* v. *Virginia Banner Coal Corpo-
ration,* 140 Va. 89, 124 S. E. 470. Nevertheless, with none
of these basic questions determined, the commissioner pro-
ceeded with the execution of the decree of reference,
heard evidence on all issues and reported merely that
the plaintiff had the only lien against the lots in question
in the amount of $1831.03, and that defendant's claim of
damages for fraud was not sustained. This report the

court confirmed, and entered a decree embodying the same, and based, specifically, in part thereon.

This final decree ignored utterly every affirmative issue raised by the answer and cross-bill. Not one of these matters is ever in any manner disposed of or even referred to by the court. This was error. Parties are entitled to have heard and adjudicated all substantial questions properly raised in the cause. We treat an ignored demurrer as overruled, *Sizemore* v. *Lambert,* 78 W. Va. 243, 88 S. E. 839; but we have not extended the rule to other pleadings. *Armstrong* v. *Town of Grafton,* 23 W. Va. 50; *Moore* v. *Huntington,* 17 Wall. (U. S.) 417, 21 L. Ed. 642; 30 C. J. S., Equity, section 604, p. 996. The commissioner does attempt to dispose of one defense set up in the answer. He says in his report: "The respondent claimed an abatement of the said vendor's lien debt because the said real estate and a street leading thereto had caved in, and the water well had become useless due to the removal of the coal. This claim is not allowed because (a) the amount of damage is not shown by any competent evidence and (b) the respondent purchased the said real estate subject to the sale of the coal and mining rights as shown by the said deed." But this finding is abortive and cannot save the final decree from error for a number of reasons at once apparent: (1) This matter was not, and could not have been referred to him; (2) no evidence shows that the "rights" vested in John M. Camden by the deed mentioned in the deed to Mrs. McDaniels related to coal; and (3) there is evidence tending to show that the quantum of damages was agreed upon by plaintiff and defendant.

Of course this loose and irregular procedure could have been waived by the defendant by consent, acquiescence or mere failure to object where the court ultimately decided the cause on the whole record, and, disregarding the reference entirely, the record justifies the decree. *Shinn* v. *Westfall,* 95 W. Va. 292, 120 S. E. 762; *Jones* v. *Rose,* 81 W. Va. 177, 94 S. E. 41; *Teter* v. *Moore,* 80 W. Va.

443, 93 S. E. 342; *Dudley* v. *Barrett*, 66 W. Va. 363, 66 S. E. 507; *Dewing* v. *Hutton*, 48 W. Va. 576, 37 S. E. 670. These cases necessarily imply that where there has been no waiver, the irregularity constitutes reversible error. But the defendant did object to the execution of the decree of reference. The transcript of evidence taken before the commissioner begins with this statement by Mr. Scott, counsel for the defendant: "I want to object to the taking of these depositions on the ground that there should not be a reference to a commissioner to enable the plaintiff to make out his case. And second, we object to the taking of the depositions on the ground of the lack of necessary parties defendant."_ And the defendant entered this exception *inter alia*, to the commissioner's report: "For that said Commissioner exceeded the scope of his authority and the scope of the order of reference in this cause entered herein on the 6th day of June, 1942, for the reason that 'under our practice, the province of the commissioner is to procure "details of facts" and supply the Court with the requisite data on which to base its judicial action.' " This was a reiteration of his original objection to proceeding under the decree, and was well taken. *Ward* v. *Ward*, 21 W. Va. 262. The irregularities in and under the decree of reference, not having been waived, survive in their full effect and constitute reversible error.

The tax deed, and the contract between the plaintiff and Raymond P. McDaniel should have been cancelled before sale of the lots. These instruments are clouds on the title of the land sought to be sold and obvious impediments to a fair sale thereof. Ordinarily a cloud on the title of property covered by a vendor's lien need not be cleared before sale, but here we have a peculiar condition. The very party who is undertaking to sell the defendant's land has, by his own acts, cast on the title of the land to be sold a serious cloud by these two instruments, one accepted and recorded by him and the other executed by. him. It is true that the tax deed appears to be invalid but it is not necessarily so. There is always

the legal possibility of some extraneous fact or circumstance which would avoid its invalidity. But, even if conclusively known to be invalid, these instruments are clouds which no purchaser of real estate would wish to have hanging over his title and which would require some trouble and expense to eliminate. They, therefore, are very practical and effective impediments to a fair sale of the defendant's property and, having been placed there by the very party who is seeking to sell, should in good conscience be released by him, or by the court cancelled, before the sale is made.

At the time of demurring the defendant filed an affidavit, exhibiting therewith a copy of the contract between the plaintiff and Raymond P. McDaniel, and stating that the latter was "a sailor, now actively engaged in the service of the United States" and "in active service of the United States Navy." It is argued that upon the filing of this affidavit, proceedings in the cause should have been stayed under what is known as the Federal Soldiers' and Sailors' Civil Relief Act. This position we cannot approve. The pertinent provision of that Act is Section 521, Title 50, App. U. S. C. A., which reads as follows:

> "At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act, unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service."

No motion was made by the defendant or any other person for a stay and thus the granting thereof was by the Act itself thereby made a matter of discretion for the court. *Boone* v. *Lightner,* 319 U. S. 561, 63 S. Ct. 1223. Raymond P. McDaniel was in no way "involved" in the

present suit; he was not a "plaintiff or defendant" therein; the affidavit and contract show no right in him which he could enforce in this suit, or by which he could affect or modify the rights of any party thereto; nothing to be done in this suit in any way affects his rights, if any he has. And even if "involved" in the suit his mere being in the United States Naval Service (in Washington, and as a radio operator, as shown later in the record) would not require a stay of the suit. "The Act cannot be construed to require continuance on mere showing that the defendant was in Washington in the military service." Opinion, Jackson, J., *Boone* v. *Lightner, supra.*

It is said that the personal representative of A. G. McDaniel who signed the purchase money notes with the defendant and also Raymond P. McDaniel were necessary parties to the suit, and the defendant by her cross-bill and answer prays that they be so made. But these notes were joint and several and no relief is sought except the enforcement of the vendor's lien. The plaintiff has the right to pursue separately either of the makers of the notes.

In order to remove from the property to be sold, the cloud created by the Raymond P. McDaniel contract, he will be a necessary party. Whether, on his being brought in, a stay of proceedings will become imperative by reason of his being in the Naval Service will need to be reconsidered. The petition filed by him claims no interest in the property, but, on the contrary, expressly repudiates his contract with the plaintiff and seeks recovery of the money paid thereunder. He also files certificates showing that he is now located at Washington as a radio operator. He had counsel, who prepared his pleadings; no necessity for his personal presence in court is pretended, and no present impediment is shown against his ability to give a deposition. There is, therefore, apparently no present necessity for such stay. At least he asks for none. We foresee no insuperable difficulty from his being brought in for this purpose. We will not assume

that a court of equity and competent counsel shall not devise methods by which the rights of all parties in such case can be substantially protected by receivership, injunction or other like equitable proceedings.

The novation claimed by the defendant to have resulted from the alleged agreement between her, her husband and Raymond P. McDaniel on the one side and the plaintiff on the other, by which, upon the payment of an additional $600 to the plaintiff, the property in question was to be conveyed to a third party to be named by the defendant, is not established by evidence.

The defendant further claims that there was substantial error in the method adopted by the commissioner and court for the application of the purchase money payments and the calculation of interest by which the amount of the lien was determined. It does appear from the calculation reported by the commissioner that instead of applying each $15 payment as of its date these payments were allowed to accumulate to the amount of $180, when they were applied as an annual payment of that amount. These monthly payments should have been applied as of their dates. *Boggess* v. *Goff*, 47 W. Va. 139, 34 S. E. 741; *Genin* v. *Ingersoll*, 11 W. Va. 549. We see no error in the rejection of Raymond P. McDaniel's petition. The petition simply set up his contract with the plaintiff, which he says was induced by the fraudulent representation of the plaintiff that he owned the lots in question; that the petitioner has paid $1350 under the contract, and demanded a deed in accordance therewith; that, upon his discovery that the plaintiff had no title, he demanded a return of his payments, and prays that the contract be cancelled and that he have a decree against the plaintiff for the payments made with interest. This presents a mere personal claim against the plaintiff which does not affect the land involved in this suit, or in any way touch the question here in litigation.

We are perturbed by other features of this case. The defendant says that she made each and all of these $15

payments. Raymond P. McDaniel in the petition tendered, but rejected by the court, alleges that certain of these payments to the amount of $1350 were made by him. It will at once appear that these payments correspond in amount and time with those required in the contract between the plaintiff and Raymond P. McDaniel and in no way conform to those required in the deed to Mrs. McDaniel. We observe, also, that of the five or six dozen receipts filed in evidence the greater number are in the name of A. G. McDaniel. A few are in the name of Mr. and Mrs. A. G. McDaniel and those following December, 1939, are in the name of Mrs. A. G. McDaniel (having been issued apparently after her husband's death). Indeed, it would appear that the plaintiff, the defendant, her husband and her son all assumed that Mrs. McDaniel had lost her title by the tax purchase and that the contract of sale to Raymond P. McDaniel was valid and binding, and acted accordingly until the justice suit in the fall of 1941, after which the payments actually made under and upon the Raymond P. McDaniel contract are sought to be transferred by the plaintiff and defendant, without Raymond P. McDaniel's knowledge or consent, to the purchase money notes under the original deed. Clarification of this confusion may affect the final result in the case.

Nor, since the cause must be remanded, can we permit it to be assumed that we consider correct the commissioner's calculation of the balance owing by the defendant. The $15 monthly payments began November, 1933, and ended April, 1941. Of this there is no dispute. Yet the commissioner credits the defendant with having made such payments from April, 1927. The plaintiff has made no objection to this perfectly patent mistake. We mention it lest we might be considered as in some sense confirming this calculation.

The decree appealed from is set aside, and the cause is remanded with direction to be proceeded in according to the views here expressed.

*Reversed and remanded.*