J. L. McClung, *et al.*

*v.*

Frank Eaton, *Judge, etc.*

(No. 10089)

Submitted September 21, 1948. Decided November 16, 1948.

*Maxwell W. Flesher,* for relators.

*T. W. Peyton,* for respondents.

Fox, Judge:

This is a proceeding in prohibition on the part of J. L. McClung and Stella McClung against Frank Eaton, Judge of the Domestic Relations Court of Cabell County, and Sue McClung, seeking to prohibit further action by that court, in a pending suit or proceeding therein, in which Sue McClung is plaintiff, and Daryl S. McClung, J. L. McClung and Stella McClung are defendants, relating to the custody of the infant child of Daryl S. McClung and Sue McClung, husband and wife. The record in said proceeding is, by stipulation, made a part of the record in the case.

Daryl S. McClung and Sue McClung were married on January 24, 1942, and their son, Daryl S. McClung, Jr., was born on August 25, 1943. They separated in March, 1944, and have not since lived together as husband and wife. On their separation, the husband assumed the custody of their child, and placed it with his parents, J. L. McClung and Stella McClung, petitioners herein. Some time after this event, he took the child to Boston for a short time, and then returned him to his grandparents, who then and now reside in Huntington, Cabell County,

West Virginia. The child remained in their custody until early in September, 1947, when the father, Daryl S. McClung, who was then in the armed services of the United States, and stationed in the State of Florida, was transferred to the Hawaiian Islands, came to Huntington and took the child with him to his new station, where he is now living.

On April 26, 1946, Daryl S. McClung instituted his suit for divorce against Sue McClung, and for the custody of the child aforesaid, in the Domestic Relations Court of Cabell County. The bill was filed, and process issued thereon returnable to May rules, 1946. On June 19, 1946, and before any appearance thereto by the defendant, Sue McClung, said suit was, on motion of the plaintiff therein dismissed without prejudice, so that at the date of the proceeding hereinafter referred to there was no suit for divorce or other proceeding, involving the custody of the child aforesaid, pending in said court.

On August 27, 1947, Sue McClung, filed her petition in the Domestic Relations Court of Cabell County against Daryl S. McClung, J. L. McClung, and Stella McClung, alleging many of the facts above stated, and further that she was deprived of reasonable privileges of visiting her child, and, while not impugning the character of its grandparents, alleges that by reason of their age and health they could not properly care for the child. She asked for its custody and, in the alternative, that the court order that the child be not removed from its jurisdiction, and that she be not denied the privilege of visiting the child for reasonable periods, and permitted to have his company and pleasure without annoying supervision. The petitioner alleges that she was allowed to see the child for short periods only, and then only in the presence of one of its grandparents. The prayer of said petition was: "* * * This petitioner prays that this petition may be filed, that proper notice may be awarded thereon; that a hearing be had and that the petitioner be awarded the custody of the said child, or, in the alternative, that the court order and decree that the said child shall not be

removed from its jurisdiction and that this petitioner may be decreed to have the privilege of not only visiting the said child for reasonable periods and for reasonable times, but also for the company and pleasure of the said child and the right to enjoy the company of the said child as a mother should without restricting, annoying and vexatious supervision * * *." Apparently it was intended by this petition to invoke the equitable jurisdiction of a court of equity.

On the filing of the petition aforesaid, the court ordered that the defendants thereto be given notice of the filing thereof, and of the date fixed for the hearing thereon. The hearing date was fixed for September 24, 1947, and the required notice was served on J. L. McClung and Stella McClung on August 29, 1947. No such notice was then or thereafter served on Daryl S. McClung, nor was there service of any kind sought to be obtained against him. Between the date of the filing of the said petition and the date fixed for the hearing thereon, the said Daryl S. McClung appeared in Cabell County and removed his son, Daryl S. McClung, Jr., from the jurisdiction of the Domestic Relations Court of said county to the Hawaiian Islands.

On September 24, 1947, J. L. McClung and Stella McClung seem to have lodged their joint plea in abatement stating (1) that Daryl S. McClung was then in the armed services of the United States, stationed in Honolulu, and that his child was in his custody at that point, and that neither was within the jurisdiction of the Domestic Relations Court of Cabell County; (2) that Daryl S. McClung had not been served with process in the case; (3) that there was no pending litigation between the parties concerned by which the said court could have acquired jurisdiction of the matters set up in said petition; and (4) that they did not at that time have the custody or control of the child. On this plea, though it was not actually filed until March 12, 1948, testimony was taken, the plea was overruled, and March 18, 1948, fixed as the date for further hearing of the case. Apparently this rul-

ing was made on the theory that at the date of the institution of the proceeding, the child involved was within the jurisdiction of the court.

On March 12, 1948, J. L. McClung and Stella McClung filed their joint demurrer to the petition aforesaid, again raising the question of the jurisdiction of the court, and on March 17, 1948, filed the affidavit of J. L. McClung, averring that Daryl S. McClung was then in the armed services of the United States, and invoking the provisions of U. S. C. A. 50, page 139, Section 521, Soldiers' and Sailors' Civil Relief Act, and subsequently, on August 4, 1948, and on this affidavit, moved the court to postpone indefinitely the hearing of the case. This motion was overruled, and the case was set down for hearing on October 7, 1948.

We now reach the institution of the present proceeding in prohibition. The same was filed on August 3, 1948, apparently one day before the last order of the Domestic Relations Court, fixing the date for the hearing on the original case. The petition filed herein sets up substantially the same matters which were relied on as a defense to the original petition, to which we have above referred. The following propositions are presented and relied upon to sustain the application for a writ prohibiting said Domestic Relations Court from further proceeding upon the original petition in the first action above discussed: (1) Lack of jurisdiction in the Domestic Relations Court to entertain this character of proceeding, on the general theory that the statute under which said court was created did not confer upon said court jurisdiction to hear matters of this character; and (2) lack of jurisdiction because of failure to serve notice or process on Daryl S. McClung. Along with these contentions there is the further contention that the presence of the child involved in Cabell County, at the date of the institution of the proceedings of August, 1947, aforesaid, was not alone sufficient to give the Domestic Relations Court jurisdiction in the absence of any process on the father of said child.

To this petition the respondents filed their demurrer, which goes to the question of jurisdiction. They also filed their answer, setting up, in general, the same defense.

It is contended in the demurrer and answer that on the following grounds jurisdiction to entertain and hear the case can be supported: (1) The residence of the child in Cabell County, and within the jurisdiction of the court, when the 1947 proceeding was instituted; (2) the institution of the 1946 divorce proceeding; (3) the jurisdiction conferred by statute, and especially that part which, with limitations, confers general equity jurisdiction on the Domestic Relations Court of Cabell County; and (4) general equity jurisdiction to care for and protect infants, and determine their custody.

It is contended that courts of equity have jurisdiction over the property and estate of infants, and in some cases the right to decree their custody, notwithstanding the fact that our statute makes general provision for the custody of children, especially in cases for divorce, or annulment of marriages. There is respectable authority to sustain the proposition that a court of equity, under its general jurisdiction, may, in a proper case, intervene to protect children either in respect of their estates or their persons. 3 Pomeroy's Equity Jurisprudence, 3d ed., Section 1307, states:

"In addition to its power to appoint guardians, the court of equity will also exercise its jurisdiction, in a proper case, and to promote the highest welfare of the infant, where there is already a guardian, natural or legal, by controlling the *person* of the infant, and by removing it personally from the custody of its natural or legal guardian, even from the custody of its own parents. By the common law, as well as by the law of nature, the father is the natural guardian of his infant children. It is not only the father's right, but his imperative *duty*, to have custody of the persons of his infant children, and to educate and train them so as to promote their future well-being as members of society. The equitable jurisdiction over the persons of infants is based upon this parental duty, and is an indirect

means of enforcing it by furnishing a remedy for its violation. The jurisdiction is a delicate one; it rests in the highest degree upon the enlightened discretion of the court, and will only be exercised when plainly demanded as the means of securing the infant's present and future well-being. It is well settled, therefore, that a court of equity may interfere on behalf of infants, and remove them from the custody and control of their father or mother, whenever the habits, practices, instruction, or example of the parent, exerting a personal influence on the infants, tend to corrupt their morals and undermine their principles; or when the parent is neglecting their education suitable for their condition in life; or is endangering their property; or is guilty of ill-treatment or cruelty towards them. The court will, of course, under like circumstances, remove infants from the custody of a legal or appointed guardian."

In Hogg's Equity Principles, Section 226, it is stated:

"The powers of a court of chancery in England to act as the guardian of infants, and to exercise a general supervision over all matters pertaining to their persons and estates, passed to and is now generally exercised by courts of chancery in this country without dispute. In the exercise of this jurisdiction, the court may permanently fix the status of infants, even in disregard of the legal rights of parents, when the welfare of the infants requires it",

citing Beach on Modern Equity Jurisprudence, Section 1022. In 1 Hogg's Equity Procedure, 3d ed., Section 788, it is stated:

"Courts of equity, as in the exercise of their jurisdiction in other cases, deal not only with the property rights and interests of infants and insane persons, but also act in some instances for the protection of their person. But, though this is true, in nearly all the instances in the more modern practice of courts of equity, the management, control and disposition of their property rights and interests have been involved; so that what is said here will relate to that matter and more especially as to the lease or sale of the

> property of such persons by the courts under the provisions of the various statutes regulating this matter."

This statement would seem to indicate that there has been some departure from the earlier rule, but it can well be argued that courts of equity, in a proper case, still have the power to control the custody of infants. *Finlay* v. *Finlay* (N. Y.), 148 N. E. 624.

Nor does this principle seem to be weakened by our statutes on divorce and annulment. It seems quite clear that as to divorce and annulment our statutes control. In *Boger* v. *Boger,* 86 W. Va. 590, 104 S. E. 49, it was held: "The divorce statute of this state, Code, ch. 64, fully, completely and comprehensively covering and dealing with its subject matter, is not merely amendatory of other laws; wherefore it alone is to be resorted to for the grounds or causes of divorce." See also *Crouch* v. *Easley,* 119 W. Va. 208, 192 S. E. 690; *Nield* v. *Nield,* 126 W. Va. 430, 28 S. E. 2d 825. Of course, in a case involving divorce, or annulment of a marriage, custody of children, under the terms of the statute, can be decreed by a court of equity, and changed from time to time as circumstances require. But, so far as we have been able to discover, there is no statutory provision under which the custody of a child as between parents can be otherwise determined, and, therefore, there must be reliance either upon an appeal to a court of equity, or by the extraordinary remedy of habeas corpus. Chapter 49 of the Code, and amendments thereto, relating to child welfare does not cover disputes between parents. Treating the proceeding of August, 1947, as one appealing to the equitable jurisdiction of the Domestic Relations Court of Cabell County, we are of opinion that had that court possessed general equity jurisdiction, it would have been warranted in entertaining the cause and entering a decree therein. We are further of the opinion that the residence of the child in Cabell County, and within the jurisdiction of said court, at the date said proceeding was instituted, gave the court the power and jurisdiction to determine the question raised respecting its custody.

In our opinion, the provisions of the Soldiers' and Sailors' Civil Relief Act is inapplicable in this case. The contention that it is applicable is based upon Section 521, Title 50, U. S. C. A., which provides that: "At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act, unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service." Section 584 of the same title seems, in effect, to terminate the Act as of May 15, 1945. In *Rosier* v. *McDaniel*, 126 W. Va. 434, 28 S. E. 2d 908, we held: "The mere showing that one not a party to a vendor's lien suit has a claim to the land involved which is admittedly inferior to that of the lien debtor, and that such person is in the United States Naval Service, does not require a stay of such suit under the provisions of the Federal Soldiers' and Sailors' Civil Relief Act. (U. S. C. A., Title 50, App. Section 521.)" Evidently, the court exercised its discretion not to delay this proceeding because of the absence of Daryl S. McClung, who by reason of not being served with process never was a party to the proceeding, and no action therein could bind him. This alone would relieve the court of any duty to stay the action because he could not in any wise be prejudiced by any decree entered in the case.

But aside from all of this, the vital question is whether the Domestic Relations Court of Cabell County had jurisdiction to hear the proceeding of Sue McClung against J. L. McClung, Stella McClung, and Daryl S. McClung, instituted in August, 1947. It is apparent that there was no suit pending in said court prior to that date, in which the custody of the child could be decreed. The divorce suit instituted in 1946 had been dismissed, and the situation was the same as if such a suit had never been instituted. If the 1947 proceeding had any sound basis, it

was the right of the petitioner therein to appeal to a court having general equity powers. Whatever equity powers the Domestic Relations Court possesses must be tested by the act of the Legislature creating it and conferring its powers.

The Domestic Relations Court of Cabell County was established by Chapter 168, Acts of the Legislature, 1921, which said enactment conferred upon that court jurisdiction of matters arising out of suits for divorce, annulment of marriage, the custody of children, etc. It is not necessary to detail the powers granted to said court by said act, inasmuch as the section granting such powers was amended by Chapter 154, Acts of the Legislature, 1939. At the expense of space, we think it well to quote Section 2 of said Chapter 154, by which powers were conferred on said court. That section reads:

"The said domestic relations court shall have jurisdiction within the said county of Cabell, concurrent with the circuit court, of all matters and causes arising out of or pertaining to annulment of marriages, separate maintenance suits, divorce, alimony, the custody and maintenance of children of litigants and the adjudication of property rights arising out of the same, and all other matters and causes coming within the purview of chapter forty-eight of the code of West Virginia, one thousand nine hundred thirty-one, and of all amendments and reenactments thereof concerning the domestic relations; of all matters and causes coming within the purview of chapter forty-nine of the code of West Virginia, one thousand nine hundred thirty-one, as enacted by chapter one, acts of the Legislature of West Virginia, one thousand nine hundred thirty-six, and of all amendments and reenactments thereof commonly known as the child welfare law; of all matters and causes coming within the purview of chapter eighteen of the code of West Virginia, one thousand nine hundred thirty-one, and all amendments and reenactments thereof, commonly called the general school law; of all matters and causes coming within the purview of chapter forty-eight of the code of West Virginia, one thousand nine hundred thirty-one, and of all

amendments and reenactments thereof, commonly known as the adoption law; and of all matters and causes coming within the purview of all other or future acts of the Legislature touching the subject matter of any and all said laws, laws and acts of the amendments and reenactments thereof, and of the common law of said state relating to the subject matter thereof. *The said domestic relations court shall also have general equity jurisdiction, with power to grant injunctions in matters involving the protection of the person or of property but not in matters involving the enforcement of criminal laws, in labor disputes, or the abatement of nuisances.* And that the proceedings and modes of procedure and power and jurisdiction conferred by law upon the circuit court or the common pleas court in any and all of said matters and causes are hereby conferred upon and shall be exercised by said domestic relations court."

The matter underscored in the above quotation did not appear in the corresponding section of the 1921 Act, and it is apparent that the Legislature intended to grant to the said court additional powers. In the 1921 Act, the Domestic Relations Court was clearly made inferior to the Circuit Court of Cabell County, inasmuch as by Section 13 thereof provision was made for applications for appeals and writs of error and supersedeas to the said circuit court or the judge thereof in vacation, and in the case of refusal of said circuit court to award such writ of error or appeal, such application might be made direct to the Supreme Court of Appeals of the State. This provision seems to be common to all statutes creating inferior courts under the provisions of Section 19 of Article VIII of the Constitution of this State.

A reading of Section 2 of Chapter 154, Acts of the Legislature, 1939, will disclose that special jurisdiction was conferred on said court to determine all matters and causes arising out of or pertaining to annulment of marriage, separate maintenance suits, divorces, alimony, and custody and maintenance of children of litigants, obviously referring to litigants in cases of such character then before the court, and the adjudication of property rights

arising out of the same; all matters and causes coming within the purview of Chapter 48 of the Code of 1931, which is the divorce statute; and all matters and causes coming within the purview of Chapter 49 of the Code of 1931, the child welfare statute, and the other specific powers granted there. Then follows the language of the section underscored in the quotation above, which, as above stated, did not appear until the 1939 amendment was made.

While the language of the 1939 amendment is broad and sweeping, we cannot bring ourselves to believe that it was the intention of the Legislature to confer, or that the language employed did confer, upon the Domestic Relations Court of Cabell County unlimited equity jurisdiction as to all matters other than those specifically excepted from the grant of jurisdiction and power. In the first place, Section 1 of Article VIII of our Constitution provides that: "The judicial power of the State shall be vested in a supreme court of appeals, in circuit courts and the judges thereof, in such inferior tribunals as are herein authorized and in justices of the peace." And then by Section 19 of the same article, it is provided that: "The Legislature may establish courts of limited jurisdiction within any county, incorporated city, town or village, with the right of appeal to the circuit court, subject to such limitations as may be prescribed by law, * * *". There is no limitation in the statute establishing the Domestic Relations Court of Cabell County, as to the amount of money or property value involved, and the nature of the court's authorized jurisdiction was such that such limitation would have been impractical and unimportant. However, additional powers granted by the 1939 statute, if given a literal interpretation, would permit the said court, whose territorial jurisdiction was limited to Cabell County, to take jurisdiction of every conceivable equitable case which might be presented to it, other than those specifically excepted. In our opinion, the amendment of 1939 was not intended to do more than to confer upon said court general equity jurisdiction, within Cabell County, as the same might affect the pro-

ceedings in causes of which the court had been specifically granted jurisdiction, and that as to injunctions, the power granted was limited to cases involving the protection of persons and property arising in some suit or proceeding as to which said court was specifically granted jurisdiction. In other words, the granting of general equity jurisdiction was intended to be confined to making effective the power of said court in the several matters as to which jurisdiction was specifically granted. To say that said court, created by the Legislature under a constitutional provision which only permits the creation of courts of limited jurisdictions, and with territorial limitations to a particular county, should be held to be a court without limitation, and equal in its equity jurisdiction to that exercised by the circuit courts of the State having state-wide jurisdiction, and making it in such respects the equal of the circuit court, except in the specific limitations contained in the act, goes beyond, as we think, any conceivable intent of the Legislature. The Domestic Relations Court of Cabell County is not given jurisdiction to determine custody of children, as between parents, except in cases where such parents, in a divorce or annulment suit, are litigating the question of the custody of the child of the marriage involved. If it should be held to have jurisdiction to determine the custody of a child, as between parents, that jurisdiction must rest upon its general equity power. We do not believe the Legislature had the power, under our Constitution, to give to any court of limited territorial jurisdiction, created for a special purpose, and to handle special types of cases, general equity power, beyond those necessary to make effective the powers granted. The Legislature has frequently established courts of limited jurisdiction which do exercise general equity powers within the limitations made effective by limiting the amount of money or the value of property of which it could take jurisdiction. In our opinion, it was the purpose of the Legislature, by the amendment made by the 1939 act, to limit the equity power granted to said Domestic Relations Court to the use of such power in cases of which it had

jurisdiction under the original statute creating it. For these reasons, we hold that said court had no jurisdiction to entertain the proceeding instituted therein by Sue McClung against petitioners herein, and, not having such jurisdiction, it necessarily follows that the writ prayed for is awarded.

*Writ awarded.*