JOHN B. ROSIER

*v.*

MINNIE G. MCDANIEL *et al.*

(No. 9805)

Submitted September 10, 1946.   Decided December 10, 1946.

*Maxwell & Young, Haymond Maxwell, Sr.,* and *Charles C. Scott,* for appellants.

*Powell, Clifford & Jones,* for appellee.

RILEY, JUDGE:

John B. Rosier brought this suit in the Circuit Court of Harrison County against Minnie G. McDaniel to subject three lots, Nos. 7, 8 and 9, situate in the Town of Hepzibah, Coal District, Harrison County, West Virginia, conveyed April 29, 1925, by Joseph B. Rosier to Minnie G. McDaniel, to sale to satisfy eight unpaid purchase money notes. A former decree, based on the report of a commissioner in chancery, fixing the amount due on said notes and directing sale to satisfy the same was by this Court reversed and the cause remanded. See *Rosier* v. *McDaniel,* 126 W. Va. 434, 28 S. E. 2d 908. Minnie G. McDaniel and her son, Raymond P. McDaniel, the latter having been brought into the suit as a party defendant on the remand, prosecute this appeal and supersedeas.

The original purchase price, as set out in the deed hereinabove mentioned, was $3,500.00, $500.00 of which was cash in hand paid, and the remainder, amounting to $3,000.00, was evidenced by ten notes in the sum of $300.00 each, due and payable in from one to ten years, respectively, each note bearing the signatures of Minnie G. McDaniel and her husband, A. G. McDaniel. A vendor's lien was retained on the face of the deed to secure payment of the purchase money notes.

About the time the third of the series of ten notes fell due, to-wit, April 29, 1928, there was a subsidence of the lots and adjoining lands and streets causing damage to the house and well. Mrs. McDaniel and her husband, A. G. McDaniel, attributing this condition to the removal of coal, discontinued payments. Various conferences between the McDaniels and Rosier ensued. Although the deed contained a recital that "it is understood and agreed" that it was made "subject to the rights vested in John N. Camden by deed", Minnie G. McDaniel made claim to damages in the amount of $1,000.00 under an alleged verbal warranty. Taxes were permitted to go

delinquent in 1928, and in 1930 the property was sold to one Martin, who transferred his interest to Rosier and the latter in 1932 took and recorded a tax deed therefor. On October 5, 1933, possibly due to negotiations, Rosier entered into an agreement of sale with Raymond P. McDaniel, then in the naval service, through the latter's father, as agent, for the same lots, plus three additional ones. This agreement sets up a consideration of $2,400.00, with interest from date, payable semi-annually, the said consideration to be paid in monthly installments of $15.00, the first on or before the first day of November, 1933, and then one every month thereafter until the consideration was paid in full. In addition the agreement provides for delivery of a deed when half the principal has been paid; that in the event payments are not made monthly said agreement should become null and void; and that after any six of said monthly payments shall not have been made, then plaintiff should have the right to immediate possession of the lots and to retain the amount so paid for the use thereof as rent. The foregoing agreement was recorded June 9, 1942. Minnie G. McDaniel was not a party to this agreement. In fact, she testified that she knew nothing of the agreement until after the death of her husband in 1939. Rosier admits that he had never discussed the agreement with her, and that, so far as he knew, she never ratified it.

Payments were made under the terms of the agreement of 1933, beginning in November, 1933, and thereafter, with more or less regularity, until April, 1941, when payments ceased. It should also be noted that prior to said agreement, during the period from 1928 to 1933, the McDaniels had made payments in amounts of $15.00 each month, which Rosier credited as "rent".

On the first appeal this Court held that the reference to the commissioner was premature; that the tax deed and agreement of sale were impediments to a fair sale of the property and should be removed; that the rejection of Raymond·P. McDaniel's petition seeking a cancella-

tion of plaintiff's agreement with him was not error; that a novation of the agreement in the deed of 1925 by subsequent agreements had not been established; and that in the circumstances a stay under the Soldiers' and Sailors' Civil Relief Act, U. S. C. A., Title 50, Appendix Section 521, was not warranted. It was, however, suggested in the opinion that in making Raymond P. Mc-Daniel a party defendant, the matter of a stay would need to be reconsidered.

On the remand an amended process was issued, returnable to April, 1944, rules. Personal service was had on Minnie G. McDaniel, and, upon affidavit of non-residence, an order of publication was had as to Raymond P. McDaniel. At April rules, plaintiff filed his amended bill of complaint praying, among other things, that Minnie G. McDaniel and Raymond P. McDaniel, be made parties defendant; that the tax deed and agreement between Rosier and Raymond P. McDaniel be cancelled; that the amount due on the original purchase price for the lots in question be determined, and the property sold to satisfy such amount.

In this amended bill of complaint plaintiff retracts from his original position that defendant, Minnie G. McDaniel, or someone for her, had made the monthly payments of $15.00 over the period from 1928 to 1937, inclusive, to-wit, a total of $1,800.00, and also makes no mention of his exhibit No. 1, introduced on the first hearing, showing such payments. The amended bill of complaint, however, admits receipt, under the agreement of sale, of payments aggregating $1,065.00, and then concludes with the averment "that there now remains due and wholly unpaid from the said defendant, Minnie G. McDaniel, to the said plaintiff, John B. Rosier, as of December 29, 1941, the sum of $2,483.54, and the interest thereon from said date", which latter sum corresponds with that carried in the original bill.

A plea in abatement was interposed on the theory that plaintiff had by his deed of 1925 and his agreement of 1933, divested himself of both legal and equitable title

to the real estate described in the bill of complaint. After a demurrer thereto had been sustained, separate demurrers were filed on behalf of Minnie G. and Raymond P. McDaniel, setting up, among other things, that the bill of complaint alleges no title or interest, either legal or equitable, in plaintiff to the property from which he seeks to remove the cloud; and that the bill on its face shows that the deed of 1925 was novated by the agreement of 1933. After consideration, the demurrers were overruled. Counsel on behalf of Raymond P. McDaniel tendered and filed a motion in writing praying for a stay under the Soldiers' and Sailors' Civil Relief Act, accompanying said motion with a "Certificate of Record of Naval Service", and an affidavit of Minnie G. McDaniel, to which motion plaintiff demurred.

Minnie G. McDaniel tendered and filed her cross-bill answer, and later an answer was filed on behalf of Raymond P. McDaniel by counsel. The trial court overruled the motion to stay the proceedings. Thereafter, replications were filed by plaintiff to the amended cross-bill answer and to the answer, respectively.

Depositions on behalf of plaintiff and defendants were taken on the issues raised by the pleadings, and on May 3, 1945, the circuit court entered the decree involved on the present appeal. In it he again overruled the motion to stay, and, after finding (1) that the tax deed of 1932 vested no right, title or interest in said lots Nos. 7, 8, and 9 in Rosier, and (2) that the agreement of October 5, 1933, vested no right, title or interest in or to said Raymond P. McDaniel, and is void and in no way affects the title of Minnie G. McDaniel thereto, set aside, cancelled and annulled the tax deed and the agreement aforesaid as clouds on said lots Nos. 7, 8 and 9. The trial court further decreed that Rosier has a vendor's lien on the three lots aforesaid, to secure payment of the balance due on the purchase money obligation; that Minnie G. McDaniel is indebted to plaintiff in the sum of $2,154.30, with interest from May 3, 1945, and costs in this cause; that Minnie G. McDaniel is the owner of

the lots in question; that she pay, or someone for her, within twenty days, said amount, with interest and costs, and in default thereof that the lots subject to the vendor's lien be sold to pay and discharge said purchase money indebtedness.

The trial court in arriving at the amount of the obligation, accepted the recital in the agreement of October 5, 1933, of "$2400.00", as the amount due Rosier as of that date, and made his calculations accordingly, ignoring payments made by the McDaniels during the period from 1928 to 1933.

The first and last payments credited by the circuit court in his calculation are dated November, 1933, and April, 1941, respectively. And, out of a possible ninety payments over such period, it appears that the defendant, Minnie G. McDaniel, produced receipts accounting for eighty-one such payments, or a total sum of $1,215.-00. All this was taken into account by the court in arriving at his finding that on May 3, 1945, Minnie G. McDaniel was indebted to plaintiff in the sum of $2,154.30.

Errors relied upon are: (1) The overruling of defendants' demurrers to the amended bill of complaint; (2) sustaining demurrer to motion of Raymond P. McDaniel, to stay proceedings under the Soldiers' and Sailors' Civil Relief Act; (3) directing cancellation of the agreement of October 5, 1933, without restitution of payments; (4) failing to give Minnie G. McDaniel credit for the payments made from January 1, 1928, to November 18, 1933, as admitted in the original bill; (5) holding the tax deed and agreement of sale "out of the way" and that the "final issue involved to be decided by the Court, must be based and determined upon the terms of the deed"; and (6) finding that Minnie G. McDaniel is indebted to plaintiff in the sum of $2,154.30, with interest from May 3, 1945, and costs in the cause, and entering a decree thereon.

There was no error in the trial court's refusal to grant a stay, for the reason that this suit involves legal ques-

tions based entirely upon records and record evidence, which Raymond P. McDaniel has not by his answer in any manner contradicted or denied.

In our opinion, the demurrers to the amended bill of complaint were properly overruled. This was, and still is, a suit to enforce a vendor's lien under Code, 38-1-1, and in order to obtain a fair price upon sale, it became necessary, as a part of the jurisdiction of a court of equity, to set aside the tax deed of 1932 and the agreement of 1933, as clouds upon the title. *Rosier* v. *McDaniel, supra.* Rosier, having placed clouds upon the title by the recordation of the tax deed and the agreement, must clear the title which he has thus beclouded, as a condition precedent to the equity which he seeks, namely, the enforcement of the vendor's lien by the sale of the property.

Plaintiff, being the owner of the indebtedness secured by the vendor's lien retained in the deed of April 29, 1925, is in privity of title with Minnie G. McDaniel, who has the status of a former owner and therefore the purchase at the tax sale was a redemption of property which inured to the benefit of Minnie G. McDaniel. *Blooming Rose Coal Company* v. *White,* 128 W. Va. 502, 37 S. E. 2d 455. It follows that the tax deed to Rosier is void. Likewise we are of opinion that the agreement of 1933 did not serve to pass title to Raymond P. McDaniel to the lots secured by the vendor's lien, for the reason that Rosier, claiming as he did under a void tax deed, had no title to convey, and, therefore, the agreement is invalid. This agreement was executed by A. G. McDaniel, as Raymond P. McDaniel's agent, presumably for the single purpose of securing to Minnie G. McDaniel her vested right in the property conveyed to her by the deed of April 29, 1925. But, Minnie G. McDaniel, as the record discloses, having had no knowledge of said agreement until after her husband's death in 1939, when she found it among his papers, is not bound by it; hence, the trial court was not warranted in accepting it as a basis for computing the payments and interest from the date thereof.

It seems to us that Raymond P. McDaniel would not be entitled to restitution of the payments made under the agreement for the reason that all of the payments advanced have gone into payment for the real estate which Minnie G. McDaniel had purchased under the deed of April 29, 1925. Raymond P. McDaniel, so far as this record discloses, had no knowledge of such payments, and if he has any right to be reimbursed, such right is against his mother, Minnie G. McDaniel.

The purported agreement of October 5, 1933, did not, as the result of a novation, in our opinion, supersede the deed of April 29, 1925, and, therefore, destroy the effect of the vendor's lien. This agreement, as appellants seem to contend, cannot be abrogated for one purpose and held existing and valid for another purpose, and certainly there can be no novation on that basis where the implement relied upon for its assertion is an invalid agreement.

While reference is made to Minnie G. McDaniel's claim to a $1,000.00 credit, it suffices to say that, by her deed, she had at least constructive notice by reference to exceptions and reservations therein; and, further, that for any damage by subsidence, caused by reason of negligence of the owner of the coal, she has recourse against the guilty party, and by the same token has no right to offset such damages against plaintiff's claim under the vendor's lien.

It is contended by the defendants, in their fourth assignment, that the circuit court erred in not allowing credit for the monthly payments admittedly made by Minnie G. McDaniel over the period from January 1, 1928, to and including October, 1933, and totalling $1,-050.00. The trial court took the position, as appears in his written opinion, that the parties had, by the agreement of October 5, 1933, adopted the sum of $2,400.00, as representing the amount then due the plaintiff from the defendant, Minnie G. McDaniel, and made his calculation from that date and on that basis. In this the

court lost sight of the fact that Mrs. McDaniel asserts that she had no knowledge of the foregoing agreement until after the death of her husband in December, 1939. And plaintiff virtually admits as much, when he testified that he never discussed the agreement of October 5, 1933, with Minnie G. McDaniel, and that plaintiff did not know whether Minnie G. McDaniel had ratified the agreement. We are therefore of the opinion that the trial court was not justified in using the amount of $2,-400.00, set forth in the agreement as the balance of the purchase price then due, and the date of the agreement as the time from which interest should be calculated.

All of the receipts introduced in evidence were issued in favor of either A. G. McDaniel or Minnie G. McDaniel. The payments prior to November, 1933, were made upon Rosier's insistence, he seeking to assert his claim for a sale of the real estate. The title to the property being in Minnie G. McDaniel, such payments cannot be considered as rent. Rosier simply had his claim under the vendor's lien. Having no title to the property, any payments made necessarily should be applied to satisfy the lien, and should not be considered as rent, as the relation of lessor and lessee never existed between Rosier and the McDaniels.

The foregoing position necessarily requires a change in the finding as to the amount due plaintiff, and the decree of the circuit court is reversed in so far, but only in so far, as the court determined that the agreement of October 5, 1933, should be taken as the basis for the calculation of the amount due. For this purpose alone the cause is remanded to the circuit court for the entry of a decree based upon the proper calculation of the amount due.

*Reversed and remanded
with directions.*